1998 ME 214

**DEPARTMENT OF ENVIRONMENTAL PROTECTION et al.[1]**

v.

**TOWN OF OTIS**

and

**George Dunn.**

Supreme Judicial Court of Maine.

Argued April 9, 1998.

Decided Sept. 4, 1998.

Andrew Ketterer, Attorney General, Lucinda E. White, Asst. Atty. Gen. (orally), Augusta, for plaintiff.

James E. Patterson (orally), Ellsworth, for George Dunn.

Bronson Platner, Ellsworth, for Town of Otis.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

SAUFLEY, Justice.

[¶ 1] This appeal requires us to determine whether the Attorney General may appeal from the grant of a variance by a zoning board of appeals when neither the Attorney General nor any of his client agencies have participated in the proceedings before the board. Because we conclude that he may not, we vacate the judgment of the Superior Court (Hancock County, *Mead J.*) and re-

---

1. Although the State of Maine was added as a plaintiff in this action, the proper plaintiffs are the Department of Environmental Protection and the Attorney General. *See Bureau of Employee Relations v. Maine Labor Relations Bd.*, 655 A.2d 326, 326 (Me.1995).

mand the matter for entry of an order dismissing the appeal.

[¶ 2] The relevant facts may be summarized as follows. The Town of Otis sold George Dunn a parcel of land, located on Beech Hill Pond, containing a cottage and a garage. The parcel is subject to an easement for a public boat launch on the property. The Town had used the cottage as a rental property and Dunn continued to use it for that purpose. Dunn also wanted to add a marina, a use requiring a permit issued by the planning board and compliance with all applicable land use standards in the Otis Shoreland Zoning Ordinance. The ordinance requires, *inter alia*, a minimum shore frontage of 300 feet and a minimum lot area of 60,000 square feet for a commercial structure.

[¶ 3] Dunn applied to the Otis Planning Board for a permit for the marina project. A DEP representative filed a letter with the Planning Board pointing out the parcel's limited shore frontage. The Planning Board declined to issue the permit, in part because the parcel included only 215 feet of shore frontage. Dunn applied to the Otis Zoning Board of Appeals for a variance to allow him to use the property as a marina. Although the ZBA held two hearings on the application, the DEP did not file any documents or appear at or participate in either hearing. At the close of the second hearing, the ZBA granted a variance with respect to shore frontage and lot area. The ZBA denied the Planning Board's and the DEP's requests for reconsideration.

[¶ 4] The DEP then filed a complaint in the Superior Court against the Town and Dunn. The complaint included an appeal pursuant to M.R. Civ. P. 80B challenging the lawfulness of the Board's decision, and two separate counts against the Town seeking injunctive relief and civil penalties pursuant to 38 M.R.S.A. § 443-A (3) (1989).[2] After denying the Town's and Dunn's motions to dismiss the 80B appeal for lack of standing, the court reviewed the administrative decision of the Board and vacated the variance. The Town and Dunn filed this timely appeal.

[¶ 5] On appeal, the Town and Dunn first assert that the court erred in finding that the DEP and the Attorney General have standing to appeal when they did not participate in the hearing before the Board. They also argue that the court erred in vacating the Board's grant of a variance. We do not reach this later contention, since neither the DEP nor the Attorney General had standing to bring this appeal.

## I. DEP

[¶ 6] We first address whether the DEP had standing to appeal the Board's decision in this matter. The Department did not appear, personally or through filings, at the ZBA hearings. Despite this failure, the trial court found that "liberally construed . . . the Department was a participant in the proceedings," because a DEP employee had participated before the Planning Board and the DEP had sought reconsideration of the ZBA's decision. Because of the DEP's failure to participate in the variance proceedings before the ZBA in any way, we disagree with the trial court's conclusion.

 [¶ 7] Absent a specific statutory authorization, a failure to participate in the proceeding from which the appeal is taken is fatal to the claimed right to maintain the appeal. "Any *party* may take an appeal . . . to Superior Court from any order, relief or denial in accordance with the Maine Rules of Civil Procedure, Rule 80B." 30-A M.R.S.A. § 2691(3)(G)(1996) (emphasis added). "Party" status for purposes of section 2691 is defined by a conjunctive two-pronged test: first, the person must have participated before the board; and, second, the person must have made a showing of a particularized injury.[3] *See Brooks v. Cumberland Farms, Inc.,*

---

**2.** The second count of the complaint alleges that the Town failed to administer and enforce its shoreland zoning ordinance by issuing the variance to Dunn. The third count alleged that the Town failed to administer and enforce its shoreland zoning ordinance by failing to prohibit Dunn's use of the cottage for multiple dwelling units. Following the DEP's appeal, we remanded these counts for a separate trial. Accordingly, only the first count, the 80B appeal, is before us.

**3.** Because both prongs of the general rule must be met and we find there was no participation, we need not address whether the DEP suffered a

1997 ME 203, ¶ 8, 703 A.2d 844, 847; *Pride's Corner Concerned Citizens Ass'n v. Westbrook Bd. of Zoning Appeals*, 398 A.2d 415, 417 (Me.1979).

■ [¶ 8] The DEP's actions in this case did not constitute "participation" in the ZBA hearings. Although the DEP provided written comments to the Planning Board at a preliminary phase of the request for permission to build a marina, those comments were related to matters before the Planning Board and not to Dunn's subsequent request for a variance from the ZBA. The DEP's 80B count challenged the legality of the ZBA's grant of a variance—not the Planning Board's denial of a use permit. The written comments to the Planning Board, not made during the proceedings from which the appeal has been taken, are insufficient to constitute participation by the DEP for purposes of conferring party status. *Cf. Jaeger v. Sheehy*, 551 A.2d 841, 842 (Me.1988) (prehearing conversations by an abutting landowner to a member of the board were insufficient to qualify as participation). Contrary to the DEP's arguments, the statutory framework of the shoreland zoning law does not provide DEP with the status of an "essential party," thereby conferring standing despite a failure to participate before the ZBA.

## 2. Attorney General

[¶ 9] We next address the Attorney General's assertion that he enjoys a separate status and has standing to appeal as a result of his statutorily-granted enforcement authority. In *Bell v. Town of Wells*, 510 A.2d 509 (Me.1986), we recognized that " 'the Attorney General, as the chief law officer of the State, has the power and duty to institute, conduct and maintain such actions and proceedings as he deems necessary for the protection of public rights and to defend against any action that might invidiously interfere with the same.' " *Id.* at 519 (quoting *In re Estate of Thompson*, 414 A.2d 881, 890 (Me.

1980)). Shoreland zoning controls are declared to be in the public interest "[t]o aid in the fulfillment of the State's role as trustee of its waters and to promote public health, safety and the general welfare...." 38 M.R.S.A. § 435 (Pamph.1997).

[¶ 10] The Attorney General's role in protecting this public interest in this area is explicitly delineated by several statutes. For example, the Attorney General's duty to protect the State's waters through shoreland zoning enforcement is set out explicitly in the shoreland zoning laws: "[t]he Attorney General ... may *enforce ordinances* adopted under [chapter 3 of Title 38, entitled Protection and Improvement of Waters]." 38 M.R.S.A. § 444 (1989 & Pamph.1997) (emphasis added). The Attorney General may, inter alia, represent the DEP in shoreland related proceedings, *see* 5 M.R.S.A. § 191 (Pamph.1997); participate in municipal proceedings involving shoreland zoning issues, *see* 38 M.R.S.A. § 444; and seek to recover civil penalties from any person who violates shoreland zoning ordinances, *see* 30–A M.R.S.A. § 4452 (1989 & Supp.1997). Additionally, the Attorney General must be joined as a party to any action challenging the validity or legality of a shoreland zoning ordinance. *See* 38 M.R.S.A. § 443–A (2) (1989 & Pamph.1997).

■ [¶ 11] There is, however, no statutory authorization for an appeal by the Attorney General from a decision of a local board when neither the Attorney General nor the DEP has participated at the municipal level. As we recognized in *Matter of Lappie*, 377 A.2d 441 (Me.1977), "[l]egislative bodies could, and frequently do, empower and direct the attorney general or some other public officer to seek judicial review of an administrative order in an appropriate case in order to protect the public rights." [4] *Id.* at 443. Unless that authorization exists in statute, however, no standing to appeal exists unless the Attorney General or state agency participated in that administrative proceeding.

particularized injury as a result of the challenged action.

4. For example, the Attorney General may "appear before the Supreme Judicial Court by brief and oral argument as a friend of the court in any

appeal in an action arising under [the Maine Tort Claims Act] where the Attorney General is not appearing representing a party to the action." 14 M.R.S.A. § 8106(2)(B) (1980).

*See, e.g., Superintendent of Insurance v. Attorney General,* 558 A.2d 1197 (Me.1989), (the controlling provision in the Insurance Code conferred standing upon the Attorney General to pursue an 80C appeal of the Superintendent's rate decision).

[¶ 12] Significantly, no such authorization or direction appears in the Attorney General's enabling statute or in Title 30–A or Title 38. Although the Legislature could authorize such appeals, it has not done so. Further, we detect no justification for equating the Attorney General's statutory authority to enforce shoreland zoning ordinances with an ability to appeal the lawfulness of the Board's grant of a variance. The authority provided by 38 M.R.S.A. § 444 to enforce ordinances for the protection and improvement of waters allows the Attorney General to take any actions specified by 30–A M.R.S.A. § 4452, but does not include the authority to appeal municipal decisions in the absence of participation.

[¶ 13] Finally, the Attorney General contends that denying it standing to pursue an 80B appeal would create an "absurdity," given its statutory mandate to oversee shoreland zoning ordinances. This contention ignores the plain fact that the Attorney General and the DEP could have participated in the proceedings before the ZBA and taken appropriate action to raise the issues important to the enforcement of the Town's ordinances.[5] Indeed, if the Attorney General had participated in the proceedings, but failed to persuade the ZBA or the reviewing court of his position, he would similarly have been precluded from collaterally challenging the legality of the variance through a statutory enforcement action. This result is neither unusual nor absurd.

[¶ 14] Although we recognize the significant limitations on the resources of the DEP and the Attorney General's office, these limitations do not justify a judicial determination that the Attorney General may appeal from a fact-intensive determination made in a proceeding in which the State did not participate. This is not a proceeding in which the legality or constitutionality of an ordinance is at issue. Rather, the Attorney General challenges the *factual* basis for the ZBA's grant of the variance. Neither the ZBA nor the applicant had the benefit of the Attorney General's specific disagreement or objections during the variance hearing. Without a challenge from the Attorney General (or an appropriate state agency) during the presentation of evidence, an applicant cannot know what additional evidence can or should be presented, and the ZBA will not have an opportunity to consider the issues that should have been raised during its hearing. Allowing a late entry by the Attorney General may impair the meaningful adjudication of controversies in the first instance before the tribunal most appropriately suited to hear the controversies and result in a waste of time and resources in local administrative proceedings.

[¶ 15] In short, neither the Town's interest in enforcing its ordinances, the State's interest in protecting public rights, nor the applicant's interest in receiving fair treatment are necessarily well served by a process in which the Attorney General is not required to address the deficiencies in an application being presented to the ZBA in order to appeal from the ZBA's decision. Accordingly, all of the competing interests should be weighed before such authority is established. The Legislature has not yet engaged in that exercise. Because neither the DEP nor the Attorney General had

---

**5.** Prior to 1991, in order to allow timely participation by the DEP, section 438–A required municipalities to forward each request for a variance under an ordinance approved by the Board of Environmental Protection to the Commissioner of Environmental Protection. *See* 38 M.R.S.A. § 438–A(6) (1989), *repealed by* P.L.1991, ch. 346, § 6. The Department recommended that this requirement be eliminated, because it was "not a cost effective mechanism toward reducing the number of inappropriate variances granted." Testimony of Richard P. Baker, Shoreland Zon- ing Coordinator for the Department of Environmental Protection speaking in support of L.D. 992 at hearing of the Energy and Natural Resources Committee dated April 12, 1991. Section 438–A(6) was repealed in 1991. *See* P.L. 1991, ch. 346, § 6. It is noteworthy that, having repealed the provision that would have assured the DEP of notice of the ZBA proceedings, the Legislature has not enacted a statute permitting the DEP or the Attorney General to appeal from a ZBA decision without participating in the hearing.

standing to appeal the ZBA's action, the 80B count must be dismissed by the Superior Court.

The entry is:

Judgment of the Superior Court vacated. Remanded for entry of dismissal of the 80B count and for further proceedings consistent with this opinion.

WATHEN, Chief Justice, with whom RUDMAN, Justice, joins, dissenting.

[¶ 16] I must respectfully dissent. In my judgment the Attorney General has standing to seek judicial review. In zoning matters, a municipality acts solely as an agent of the State, *see Burkett v. Youngs*, 135 Me. 459, 465, 199 A. 619, 621–22 (1938), and thus the State is always a party in a zoning proceeding. We have previously recognized that "the Attorney General, as the chief law officer of the State, has the power and duty to institute, conduct and maintain such actions and proceedings as he deems necessary for the protection of public rights and to defend against any action that might invidiously interfere with the same." *Bell v. Town of Wells*, 510 A.2d 509, 519 (Me.1986) (quoting *In re Estate of Thompson*, 414 A.2d 881, 890 (Me.1980)). Here, despite the Town's participation in the proceeding, the Court treats the chief law officer of the State as though he were a private party. The concept of standing serves, in part, to prevent others from asserting the authority entrusted to the Attorney General. Private parties have standing to appeal an administrative ruling only if they participated in the hearing and demonstrate a particularized injury that is different than that sustained by the public in general. *Pride's Corner Concerned Citizens Ass'n v. Westbrook Bd. of Zoning Appeals*, 398 A.2d 415, 417 (Me.1979); *see also Ricci v. Superintendent, Bureau of Banking*, 485 A.2d 645, 647 (Me.1984) (where complaint only alleges an injury suffered by all of the citizens of the State, plaintiffs did not demonstrate "particularized injury"). Today, the Court stands the judicially-crafted doctrine of standing on its head and bars the Attorney General from protecting public rights.

[¶ 17] Shoreland zoning controls are declared to be in the public interest "[t]o aid in the fulfillment of the State's role as trustee of its waters and to promote public health, safety and the general welfare." 38 M.R.S.A. § 435 (Pamph.1997). The Attorney General's duty to protect the State's waters through shoreland zoning enforcement is derived not only from the common law, but the shoreland zoning law specifically provides that "[t]he Attorney General ... may *enforce ordinances* adopted under this chapter [Protection and Improvement of Waters]." 38 M.R.S.A. § 444 (1989 & Pamph.1997) (emphasis added). That enforcement necessarily includes seeking judicial review of an administrative decision in order to protect the integrity of the shoreland zoning laws. This is not to suggest that the Attorney General has absolute authority to raise any issue at any time. In the present case, the Attorney General filed a timely appeal with the Superior Court but had not participated directly in the ZBA hearing. Issue preclusion for issues not raised at the hearing is clearly called for, but I would not deny the Attorney General the opportunity to demonstrate on behalf of the State that the Board's decision is completely without evidentiary support.

[¶ 18] In this case, the evidentiary record simply does not support the Board's decision to grant a variance. The granting of a zoning variance is controlled by statute. The Board may grant a variance only if the applicant can show that strict application of the ordinance would cause the applicant undue hardship defined as follows:

A. The land in question can not yield a reasonable return unless a variance is granted;

B. The need for a variance is due to the unique circumstances of the property and not to the general conditions in the neighborhood;

C. The granting of a variance will not alter the essential character of the locality; and

D. The hardship is not the result of action taken by the applicant or a prior owner.

30–A M.R.S.A. § 4353(4) (Supp.1997).

[¶ 19] The record does not support the Board's decision with respect to the first

requirement, i.e., that the property could not yield a reasonable return without the variance. Failure to yield a "reasonable return" means the "practical loss of *all* beneficial use of the land." *Brooks v. Cumberland Farms, Inc.*, 1997 ME 203, ¶ 14, 703 A.2d 844, 848 (citations omitted). We have consistently stated that "a zoning regulation imposes undue hardship within the meaning of section 4353 only if the property subject to the regulation cannot yield a reasonable return from *any* permitted use." *Id.* (citations omitted). Moreover, we have stated that "reasonable return is not the maximum return." *Perrin v. Town of Kittery*, 591 A.2d 861, 863 (Me. 1991).

[¶ 20] The reasons given for the property's inability to yield a reasonable return were as follows: Having purchased the property from the Town, Dunn stated that he wanted "the most benefits that he could get out of it"; and, without a marina, he could not get his money back or make a profit, because the income from the rental unit was insufficient due to the lack of privacy resulting from the public boat launch. Such evidence falls far short of demonstrating that Dunn has lost *all* beneficial use or that he cannot yield a return from *any* permitted use. Rather, the record shows that there is a residential camp on the property, and, further, that it is being rented by Dunn as residential property. The fact that the camp is not as desirable as other camps because it lacks privacy does not mean that he has lost all beneficial use. His understandable desire to maximize profits does not support the conclusion that he is being denied a reasonable return.

[¶ 21] The Court attaches far too much importance to the late arrival of the Attorney General in this litigation. Dunn would suffer no disadvantage other than a testing of the sufficiency of the evidence he presented in support of the variance. Faced with a clear choice of either upholding the zoning law or dismissing the timely appeal of Maine's chief law officer on the basis of standing, I choose the former.