STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, SS.                                     AMM - PEN - 4/8 ...

THE PENOBSCOT NATION and )
THE PASSAMAQUODDY TRIBE)
                Petitioners,   )
                               )
                               )
                               )
            v.                 )          **AP-04-3**
                               )
                               )
MAINE HARNESS RACING           )
COMMISSION and BANGOR          )          ┌─────────────────────────┐
HISTORIC TRACK, INC.,          )          │   FILED & ENTERED       │
                Respondents.)             │   SUPERIOR COURT        │
                               )          │                         │
CasinosNo!                     )          │   APR 0 2 2004          │
                Petitioner,    )          │                         │
                               )          │   PENOBSCOT COUNTY      │
                               )          └─────────────────────────┘
            v.                 )          **AP-04-4**
                               )
                               )
MAINE HARNESS RACING           )          DONALD
COMMISSION and BANGOR          )             LA
HISTORIC TRACK, INC.,          )
                Respondents.)             **MAY 25 2004**

## Decision and Judgment

### PROCEDURAL HISTORY

On February 17, 2004, Petitioners Penobscot Indian Nation and the Passamaquoddy Tribe ("the tribes") commenced an action in this court seeking judicial review of the orders and decisions of Respondent Maine Harness Racing Commission ("MHRC") approving a conditional license on behalf of Bangor Historic Track, Inc., ("BHT") to operate harness racing at the Bangor Racetrack and conduct pari-mutuel wagering thereon. Similarly on February 18, 2004, Petitioner CasinosNo! also commenced an action pursuant to Rule 80C seeking judicial review of the MHRC decision. In addition, CasinosNo! seeks a declaratory judgment clarifying whether BHT has satisfied the legal requirements for a conditional harness racing license, and whether a conditional license is sufficient to trigger the automatic authority to operate a slot machine enterprise at the racetrack. The Tribes filed a Second Amended Petition for Review on February 24, 2004, which further clarified their claims.

Numerous parties sought leave of court to intervene in this action.

Upon the representation that the impending harness racing season might be adversely affected by the pendency of this matter, the court invited all parties to submit

position papers with suggestions for the future course of this potentially complex matter. After consideration of the parties' submissions, the court issued a Scheduling Order on February 27, 2004, and a Corrected Scheduling Order on March 1, 2004.

The Scheduling Order consolidates the two actions and grants leave for all parties seeking intervention to do so. Additionally, it identifies three preliminary issues which must be resolved before the actual propriety of the issuance of the conditional license can be addressed.[1] The court, in essence, established a bifurcated process whereby the preliminary issues would be fully addressed in the first round of briefing. If the preliminary issues are resolved in favor of the Petitioners, a second round of proceedings will address "the merits" of the appeals – the typical 80(C) review of final agency action.

The court established a greatly expedited briefing schedule for the parties on these issues and oral argument was held on March 31, 2004. No verbatim record was made of the arguments as they took place during an administrative week. All parties appeared through counsel.

## FACTS

The facts are well established in the rather extensive record which has been duly filed by MHRC. Although the parties disagree on the interpretation to be placed upon the events below, they do not significantly disagree on the facts of the actual dates, times, and actions taken. The court finds the record to be adequate to address the issues raised in this first proceeding.

BHT has conducted the harness racing operation at the Bangor Racetrack for the last ten years or so. On December 31, 2002, the Capital Seven corporation (owned primarily by Shawn Scott) purchased 49.86% of BHT. This triggered a reopening of the license and race date awards for 2003 which MHRC had previously awarded to BHT. Ultimately, a conditional license was awarded to BHT for the 2003 racing season with the issue of the suitability of Capital Seven and Shawn Scott deferred to hearings to be conducted later in the year.

The suitability hearings had not been concluded when BHT applied on October 24, 2003, to MHRC for a license to conduct harness racing meets for 2004. Hearings were held on December 16-19, 2003, regarding the suitability issues (from the 2003 season) and the new pending application of BHT for the 2004 season. The hearings were recessed in late December. In early January, 2004, the parties were notified that the Capital Seven interests in BHT were being sold to another party (Penn National), and the hearings were further recessed to await this development. On January 9, 2004, the MHRC voted to award a conditional license for the 2004 season to BHT if the Capital Seven interest in BHT was, in fact, transferred in full to Penn National. This vote prompted MHRC's Order of January 15, 2004.

---

[1] - The issues are: (1) Did the Maine Harness racing Commission abuse its discretion or otherwise act unlawfully when it denied the Petitioners' requests to intervene ? (2) If so, what is the proper remedy ? (3) Are the Petitioners "aggrieved" for the purposes of these proceedings ?

The Capital Seven interest was duly transferred to Penn National, and on February 6, 2004, BHT amended its application to reflect the new ownership of BHT stock by Penn National. The MHRC simultaneously notified the parties and published notice of its intent to hold a hearing on February 17, 2004, to review the conditions established upon BHT's conditional license. The Petitioners filed requests to intervene on February 5, 2004.

A hearing took place on February 17, 2004, to confirm the transfer of ownership as noted above and to consider other issues. On March 3, 2004, the MHRC met and approved the issuance of the conditional license[2] as previously provided by the Order of January 15, 2004. The requests for intervention were denied as being untimely. A final meeting was held on March 3, 2004, and a written decision was issued confirming the conditional license to BHT and the denial of the Petitioners' requests for intervention.

## DISCUSSION

The central issue in the Petitioners' challenges to the issuance of the conditional license concerns the denial of their requests to intervene. If intervention was improperly denied, the Petitioners have established a valid means to attack the proceedings below. Conversely, if intervention was properly denied, these administrative appeals are no longer viable. Department of Environmental Protection v. Town of Otis, 1998 ME 214; 716 A.2d 1023 (Me. 1998). Accordingly, the court's first avenue of inquiry concerns the intervention issue.

As the MHRC denied the requests for intervention as being untimely, the court must determine whether this action constitutes an abuse of discretion or was otherwise erroneous as a matter of law. The Administrative Procedures Act, 5 MRSA §9054(1), provides that a party may intervene in an agency proceeding on timely application, made pursuant to agency rules, so long as that party makes a showing that he is or may be a member of a class which is or may be substantially or directly affected by the proceeding.[3] See also Chapter 21 § 7(1) of the Rules of the Maine State Harness Racing Commission. The Administrative Procedures Act also allows local governments to intervene without an express showing that they are directly affected.

On the timeliness issue, the Petitioners assert that the change in ownership of BHT in early February created – as a matter of law – a new application. Since their requests for intervention were filed virtually simultaneously with this change in ownership, they argue that their requests simply cannot be denied as being untimely as a matter of discretion. Accordingly, much turns upon the issue of whether a new proceeding for licensure of BHT was commenced in February.

---

[2] - The license was issued upon a condition that the suitability inquiry would be concluded at a later date.

[3] - The notice of hearing by MHRC provided that any applications for intervention would be accepted only until the commencement of the hearing.

The Petitioners correctly state that 8 MRSA §271(1) creates an <u>automatic</u> and immediate revocation of a harness racing license for any licensee who experiences a change of 50% or more of its voting stock. Such a licensee may not conduct any harness racing operations until further action by the MHRC. Petitioners assert that this is what occurred in the instant matter by virtue of the February acquisition of the BHT stock by Penn National from Capital Seven. By contrast, the MHRC argues that the BHT application for the 2004 season was an <u>ongoing</u> process which started in late 2003 and was on the brink of completion at the time of Petitioners' requests.

The court rejects the Petitioners' arguments that the policy behind §271(1) requires that it be applied to the application process (i.e.- a pending application is rendered null and void, and a new application process commences by operation of law, when a partial change of ownership of an applicant occurs prior to the issuance of a license). The statute, by its express terms, makes no such provision. Further, Petitioner's interpretation is inconsistent with the obvious intent of the statute. Section 271(1) is clearly intended to avoid the change of a licensee's ownership without the prior approval of the MHRC. Without §271(1), an ownership change could occur during the course of a racing season and the MHRC would have no authority to act until the next round of applications commences. The MHRC must have the authority, in all instances and at all times, to know and review the ownership components of licensees.

Section 271(1) would provide no practical benefit to the MHRC in the context of an <u>application</u> proceeding. The MHRC is already entitled to know the ownership of an applicant at all times. If ownership changes during the application process, the MHRC can simply redirect its attention to the new shareholders of the pending applicant.[4] The inquiry at that point would be focused simply upon issues raised by the appearance of the new stockholder(s). The Commission need not start an entirely new process, built from the ground up, which involves duplication of effort and waste of resources.

Upon these circumstances, the court concludes that the Petitioners arrived upon the scene too late in the game. Days and days of contested hearings had taken place, rulings were made upon the evidence, and the proceedings were winding down in anticipation of the upcoming harness racing season.[5] The issuance of a conditional license to BHT and assignment of 2004 race dates were already in the works. The court cannot conclude that MHRC's denial of the intervention requests as untimely was erroneous or an abuse of discretion. Although this result effectively concludes the administrative appeal, the court will address other issues raised by the parties regarding the question of standing.

---

[4] - This is the case here. The applicant is, and always has been, Bangor Historic Track. Obviously if an application is withdrawn and a new <u>applicant</u> seeks a license, a new proceeding is necessarily commenced.

[5] - The fact that the February 6, 2004, "amended renewal" application was submitted on a "new" license application form with the words "amended renewal" written thereon is of no legal significance. Under the circumstances noted above, it was clearly part and parcel of the ongoing proceeding which commenced in the autumn of 2003 for the 2004 race season.

Petitioners suggest that they have unique direct and substantial interests in the BHT application for a harness racing license. Interestingly, they do not focus their concerns upon the fact of harness racing meets and pari-mutuel betting – these have been taking place for many decades without objection. Rather their concern is that holders of such licenses now have the authority to run slot machines at their facilitates. 8 MRSA §915(4).

MHRC clearly seems to want no part in the gambling regulatory infrastructure in the State of Maine (beyond the pari-mutuel wagering associated with harness racing meets). However, the State of Maine has apparently not established an independent commission to review and approve "racino" operators. This responsibility has fallen upon the unwelcoming shoulders of the Maine Harness Racing Commission. Despite the efforts of MHRC to distance itself from the slot machine regulatory environment, it has been thrust into that role and must undertake it until such time legislative enactments release it from such.

CasinosNo! suggests that it has members in Bangor who will be (arguably) affected by increased crime rates, property devaluation, social service demands and such. The tribes assert that they have individual members who may be adversely affected by the proximity of a gambling facility. Additionally, they cite the threat to their own high stakes bingo games which take place a short distance away. Are these concerns such that they bestow upon the Petitioners "direct and substantial interests" in the issuance of the harness racing license ?

The court thinks not. Each group consists of individuals who clearly have strong opinions regarding the operation of slot machines in Bangor, but neither constitutes a specific class of persons which is or may be substantially or directly affected by the MHRC proceedings. Accordingly, separate and apart from the timeliness issue, the court concludes that the Petitioners lack standing and, thus, are not aggrieved by the decision of the MHRC denying their requests for intervention.

The tribes assert that they are entitled to intervene, regardless of timeliness issues and without a showing of a direct effect, by virtue of the fact that they are entitled to be treated as municipalities and governmental entities who can intervene in MHRC proceedings as a matter of right.[6] However, the circumstances must be reviewed in any setting where the tribes assert such a right to determine whether they are to be treated

---

[6] - 30 MRSA §6206(1) reads: "Except as otherwise provided in this Act, the Passamaquoddy Tribe and the Penobscot Nation, within their respective Indian territories, shall have, exercise and enjoy all the rights, privileges, powers and immunities, including, but without limitation, the power to enact ordinances and collect taxes, and shall be subject to all the duties, obligations, liabilities and limitations of a municipality of and subject to the laws of the State, provided, however, that internal tribal matters, including membership in the respective tribe or nation, and the right to reside within the respective Indian territories, tribal organization, tribal government, tribal elections and the use or disposition of settlement fund income shall not be subject to regulation by the State...."

as sovereign nations, persons, business corporations, or municipal governments. <u>Great Northern Paper v. Penobscot Nation</u>, 2001 ME 68; 770 A.2d 574.[7]

As noted above, the mere fact that some tribal members live short distances from the racetrack does *ipso facto* bestow municipal status upon the tribes' efforts to intervene here. The tribes assert, at page 2 of their <u>Brief</u>, that they are aggrieved by the "...[installation of]... a corporation with principals, associates and creditors of unknown or questionable moral character in exclusive control over harness horse racing gambling and related multi-million dollar slot machine gambling, in the immediate vicinity of the Penobscot Indian Reservation and presenting substantial potential detriment to the welfare of the Tribes and the high stakes bingo games on which they depend to support their tribal governments." Clearly the tribes are concerned about potential competition by the slot machine operation with their own existing gambling operations.[8] Under this circumstance, the court cannot conclude that the tribes' interests and roles here are anything other than that of a business entity. As such, they not invoke the Title 30 municipality status. Accordingly, upon this finding, the tribes are not entitled to intervene – even late in the proceedings – as a matter of law.

Based upon the conclusions noted above, this court declines to find that MHRC's refusal to allow intervention by the Petitioners was in violation of statutory process. Neither was it affected by bias or error of law nor arbitrary or capricious or characterized by abuse of discretion. *See* 5 MRSA §11007(4)(c). Accordingly, the Petitioners' appeals from the orders and decisions of the Maine Harness Racing Commission as referenced in the Complaints are dismissed.

So Ordered.

The Clerk may incorporate this Decision and Judgment upon the docket by reference.

Dated: April 2, 2004

_____
Andrew M. Mead
JUSTICE, MAINE SUPERIOR COURT

---

[7] - The court does not reach the argument tendered by Intervener Shawn Scott/ Capital Seven that the tribes' municipal capacity is <u>geographically</u> delimited to areas "...within their respective Indian territories...".

[8] - Federally recognized Indian tribes have an exclusive right to operate high stakes bingo games in the State of Maine. 17 MRSA §314-A. Proceeds from the games are not limited to use for governmental functions.

Date Filed __2/18/04_____ ____Penobscot_____ Docket No. ___AP-2004-4_____
County 2/27/04 Consolidated AP-2004-3

Action _____Rule 80C Appeal_____

**SPECIALLY ASSIGNED TO JUSTICE ANDREW M. MEAD**

2/27,

MAINE HARNESS HORSEMAN'S ASSOCIATION Interve
SHAWN SCOTT AND CAPITAL SEVEN Intervenor
DAVRIC MAINE CORPORATION Intervener
MAINE STATE HARNESS RACING COMMISSION AN

CASINOS NO!                                              vs.   BANGOR HISTORIC TRACK, INC. (Party-In-Interes

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| VERRILL & DANA<br>One Portland Square<br>P O Box 586<br>Portland ME 04112-0586<br>BY: James Kilbreth, Esq. | OFFICE OF THE ATTORNEY GENERAL<br>Six State House Station<br>Augusta ME 04333-0006<br>By: G. Steven Rowe, AG  WITHDRAWN 2/20,<br>      Christopher C. Taub, AAG  WITHDRAWN<br>      Ruth McNiff, AG WITHDRAWN  2/20/04<br>FOR: Maine State Harness Racing |

PIERCE ATWOOD, One Monument Square, Portland, ME 04
BY:  Catherine R. Connors, Esq.
     Peter W. Culley, Esq.
     Cristopher E. Howard, Esq.
FOR: Bangor Historic Track

| Date of Entry | | |
|---|---|---|
| 2/18/04 | Rule 80C Petition with Inc<br>Exhibit A - E attached fil | |
| 2/18/04 | Motion for Stay and Motior<br>pursuant to M.R.Civ.P. 80(<br>Exhibits B - E attached ar | AP-2004- |
| 2/18/04 | Request for Expedited Hear<br>filed by Plaintiff. | EATON PEABODY<br>Fleet Center - Exchange St<br>P O Box 1210<br>Bangor ME 04402-1210<br>BY: Bernard Kubetz, Esq.<br>     Karen Doore, Esq.<br>FOR: MAINE HARNESS RACING COMMISSION |
| 2/19/04 | Notice of Appearance filec<br>and Ruth McNiff, AAG, on 1<br>Commission. | |
| 2/19/04 | Notice of Assigned Justice<br>Single Justice Assignment<br>referenced case is specia]<br>/s/ Margaret Gardner, Clei | |
| 2/19/04 | File presented to Justice | |
| 2/20/04 | Per direction of the court<br>Motion to Specify Future (<br>with Incorporated Memoran(<br>2:00 p.m. before Justice /<br>telephone. | |
| 2/20/04 | Respondent orally requests<br>at 2:00 p.m. | |
| 2/20/04 | Per instruction of the court, telephonic conference set 2/20/04 at 10:00 a<br>before Justice Andrew M. Mead. Atty. Taub, AAG to initiate call. | |

Date Filed __2/18/04_____  ____Penobscot_____  Docket No. ___AP-2004-4_____

County  2/27/04 Consolidated AP-2004-3

Action _____Rule 80C Appeal_____

**SPECIALLY ASSIGNED TO JUSTICE ANDREW M. MEAD**

2/27,

MAINE HARNESS HORSEMAN'S ASSOCIATION Interv

SHAWN SCOTT AND CAPITAL SEVEN Intervenor

DAVRIC MAINE CORPORATION Intervener

MAINE STATE HARNESS RACING COMMISSION AN

CASINOS NO!                      vs.  BANGOR HISTORIC TRACK, INC. (Party-In-Interes

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| VERRILL & DANA<br>One Portland Square<br>P O Box 586<br>Portland ME  04112-0586<br>BY:  James Kilbreth, Esq. | OFFICE OF THE ATTORNEY GENERAL<br>Six State House Station<br>Augusta ME  04333-0006<br>By:  G. Steven Rowe, AG   WITHDRAWN 2/20/<br>Christopher C. Taub, AAG  WITHDRAWN<br>Ruth McNiff, AG WITHDRAWN  2/20/04<br>FOR:  Maine State Harness Racing |

PIERCE ATWOOD, One Monument Square, Portland, ME 04

BY:  Catherine R. Connors, Esq.
Peter W. Culley, Esq.
Cristopher E. Howard, Esq.
FOR: Bangor Historic Track

| Date of Entry | | |
|---|---|---|
| 2/18/04 | Rule 80C Petition with Independent Count for Declatory Relief with Exhibit A - E attached file | |
| 2/18/04 | Motion for Stay and Motion pursuant to M.R.Civ.P. 80C( Exhibits B - E attached and | PRETI FLAHERTY<br>45 Memorial Circle<br>P O Box 1058<br>Augusta ME  04332-1058<br>BY:  Stephen E.F. Langsdorf, Esq.<br>FOR:  Maine Harness Horseman's Association |
| 2/18/04 | Request for Expedited Heari filed by Plaintiff. | |
| 2/19/04 | Notice of Appearance filed and Ruth McNiff, AAG, on b Commission. | Bruce M. Merrill, P.A.<br>225 Commercial St. Suite 401<br>Portland ME  04101-4613<br>FOR:  Capital Seven, LLC<br>Shawn Scott |
| 2/19/04 | Notice of Assigned Justice Single Justice Assignment referenced case is special /s/ Margaret Gardner, Cler | |
| 2/19/04 | File presented to Justice | MAINE STATE HARNESS RACING COMMISSION<br>28 STATE HOUSE STATION<br>AUGUSTA, ME.  04330-0028 |
| 2/20/04 | Per direction of the court Motion to Specify Future C with Incorporated Memorand 2:00 p.m. before Justice A telephone. | THOMPSON BULL FUREY BASS & MACCOLL LLC PA<br>120 EXCHANGE STREET<br>P O BOX 447<br>PORTLAND ME  04112 0447<br>BY:  EDWARD S. MACCOLL, ESQ.<br>FOR:  DAVRIC MAINE CORPORATION, d/b/a<br>SCARBOROUGH DOWNS |
| 2/20/04 | Respondent orally requests at 2:00 p.m. | |
| 2/20/04 | Per instruction of the court, telephonic conference set 2/20/04 at 10:00 a before Justice Andrew M. Mead. Atty. Taub, AAG to initiate call. | |

Date Filed __2/17/04__    __Penobscot__    Docket No. __AP-2004-3__

County 2/27/04 Consolidated    AP-2004-4

MAINE HARNESS HORSEMAN'S ASSOCIATION Interve

Action __Rule 80C Appeal__    SHAWN SCOTT AND CAPITAL SEVEN Intervener

DAVRIC MAINE CORPORATION Intervener

**ASSIGNED TO JUSTICE ANDREW M. MEAD**    2/18/04 - Amended Petition filed deleting

Respondent Bangor Historic Track, Inc.

2/24/04 - Second Amended Petition filed
adding Respondent Bangor Historic Track, Inc

THE PENOBSCOT NATION AND THE    MAINE HARNESS RACING COMMISSION AND
PASSAMAQUODDY TRIBE    vs. BANGOR HISTORIC TRACK, INC. (deleted 2/18/

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| DRUMMOND, WOODSOM & MACMAHON<br>245 Commercial St<br>P O Box 9781<br>Portland ME  04104-5081<br>By:  Kaign Smith, Jr. Esq<br>     Richard A. Spencer, Esq. | G. Steven Rowe, Attorney General<br>Office of the Attorney General<br>Six State House Station<br>Augusta ME 04333 0006<br>By:  Christopher C. Taub, AAG **W/D 2/20/04**<br>     Ruth McNiff, AAG **W/D 2/20/04**<br>For: Maine State Harness Racing Commission |

PIERCE ATWOOD
One Monument Square
Portland, Maine 04101
BY:  Catherine R. Connors, Esq.
FOR:  Respondent Bangor Historic Track, Inc

EATON PEABODY
Fleet Center - Exchange St
P O Box 1210
Bangor ME  04402-1210
BY:  Bernard Kubetz, Esq    A/O 2/26/04
Karen Doore Esq
FOR:  Maine State Harness Racing Commission

| Date of Entry | |
|---|---|
| 2/17/04 | Verified Petition for Re<br>filed by Plaintiffs. |
| 2/17/04 | Attorney Certificate Pur |
| 2/17/04 | Motion for Temporary Res |
| 2/17/04 | Memorandum of Law in Sup<br>the Passamaquoddy Tribe<br>with Exhibits A - E atta |
| 2/17/04 | Motion for Preliminary I<br>(Memorandum incorporated |
| 2/17/04 | Notice of Appearance on<br>Commission filed by Atty |
| 2/17/04 | File presented to Justic |
| 2/17/04 | File returned by Justice |
| 2/17/04 | By letter, Plaintiff Wit<br>Motion for Preliminary I |
| 2/17/04 | Notice of Assigned Justi<br>Justice Assignment of Ci<br>case is specially assigne<br>Gardner, Clerk.  Copy |
| 2/18/04 | Amended Petition For Re |
| 2/19/04 | Notice of Appearance by<br>Bangor Historic Track, |

THOMPSON BULL FUREY BASS & MACCOLL LLC PA
120 EXCHANGE STREET
P O BOX 447
PORTLAND ME  04112 0447
BY:  EDWARD S. MACCOLL, ESQ.
FOR:  DAVRIC MAINE CORPORATION, d/b/a
      SCARBOROUGH DOWNS

Date Filed __2/17/04__     Penobscot     Docket No. __AP-2004-3__

County 2/27/04 Consolidated    AP-2004-4     2/2

Action __Rule 80C Appeal__

MAINE HARNESS HORSEMAN'S ASSOCIATION Interv
SHAWN SCOTT AND CAPITAL SEVEN Intervener
DAVRIC MAINE CORPORATION Intervener

**ASSIGNED TO JUSTICE ANDREW M. MEAD**

2/18/04 - Amended Petition filed deletin
Respondent Bangor Historic Track, Inc.

2/24/04 - Second Amended Petition filed
adding Respondent Bangor Historic Track, Inc

THE PENOBSCOT NATION AND THE
PASSAMAQUODDY TRIBE

vs.

MAINE HARNESS RACING COMMISSION AND
BANGOR HISTORIC TRACK, INC. (deleted 2/18

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| DRUMMOND, WOODSOM & MACMAHON<br>245 Commercial St<br>P O Box 9781<br>Portland ME 04104-5081<br>By: Kaign Smith, Jr. Esq<br>    Richard A. Spencer, Esq. | G. Steven Rowe, Attorney General<br>Office of the Attorney General<br>Six State House Station<br>Augusta ME 04333 0006<br>By: Christopher C. Taub, AAG W/D 2/20/04<br>    Ruth McNiff, AAG W/D 2/20/04<br>For: Maine State Harness Racing Commission |

PIERCE ATWOOD
One Monument Square
Portland, Maine 04101
BY: Catherine R. Connors, Esq.
FOR: Respondent Bangor Historic Track, In

| Date of Entry | |
|---|---|
| 2/17/04 | Verified Petition for Review and Request for Declaratory Judgment filed by Plaintiffs. |
| 2/17/04 | Attorney Certificate Pur |
| 2/17/04 | Motion for Temporary Res |
| 2/17/04 | Memorandum of Law in Sup the Passamaquoddy Tribe with Exhibits A - E atta |
| 2/17/04 | Motion for Preliminary I (Memorandum incorporated |
| 2/17/04 | Notice of Appearance on Commission filed by Atty |
| 2/17/04 | File presented to Justic |
| 2/17/04 | File returned by Justice |
| 2/17/04 | By letter, Plaintiff Wit Motion for Preliminary I |
| 2/17/04 | Notice of Assigned Justi Justice Assignment of Ci case is specially assigne Gardner, Clerk. Copy |
| 2/18/04 | Amended Petition For Re |
| 2/19/04 | Notice of Appearance by Bangor Historic Track, |

MAINE STATE HARNESS RACING COMMISSION    intif
28 STATE HOUSE STATION
AUGUSTA, ME. 04330-0028

PRETI FLAHERTY BELIVEAU PACHIOS &
  HALEY LLC
45 MEMORIAL CIRCLE
P O BOX 1058
AUGUSTA, ME. 04332-1058
BY: STEPHEN E.F. LANGSDORF, ESQ.
FOR: ME. HARNESS HORSEMEN'S ASSOCIATION

BRUCE M. MERRILL, P.A.      and
225 COMMERCIAL ST SUITE 401
PORTLAND, ME. 04101
FOR: SHAWN SCOTT, INDIVIDUALLY, AND    ingle
CAPITAL SEVEN, LLC      enced
BY: BRUCE M. MERRILL, ESQ.

THOMPSON BULL FUREY BASS & MACCOLL LLC PA
120 EXCHANGE STREET
P O BOX 447
PORTLAND ME 04112 0447
BY: EDWARD S. MACCOLL, ESQ.
FOR: DAVRIC MAINE CORPORATION, d/b/a
SCARBOROUGH DOWNS