STATE OF MAINE                          SUPERIOR COURT
LINCOLN, SS.                            CIVIL ACTION
                                        Docket No. AP-07-8
                                        JLP - . . . - 29/2009

E. Davies Allen et al.,
        Plaintiffs


        v.                              Order on Appeal


Inhabitants of the Town
of Westport Island,
        Defendant


        Pursuant to the Town of Westport Island Shoreland Zoning Ordinance

("Ordinance") § 16(G)((4), 30-A M.R.S. § 2691(3)(G) and M.R.Civ.P. 80B, E. Davies

Allen, Paul L. Nergaard and Michael E. Stern appeal from the decision of the Town of

Westport Island's Zoning Board of Appeals (the Board) that they did not have standing to

appeal the approval of a permit application issued by the Town's Planning Board,

authorizing the construction of a new boat ramp on Town property. The court has

considered the parties' submissions on this appeal.

        The plaintiffs appear in this action as pro se parties. Stern, however, signed the

complaint and all other submissions for himself and also as "attorney-in-fact" for Allen.

In one of its filings, the Town suggests that Stern is an attorney licensed to practice in

Maine. However, the plaintiffs' filings confirm that Stern does not appear here as an

attorney-at-law representing Allen's interests in that capacity. A party to a legal

proceeding may not represent another as the latter's ostensible attorney-in-fact. See

Haynes v. Jackson, 2000 ME 11, ¶ 15, 744 A.2d 1050, 1054. Therefore, because Allen

himself has not properly appeared in this action and because no other person with lawful

representational authority has appeared for him, Allen's appeal is dismissed. This case

may proceed on the strength of the appeal filed by Nergaard and Stern.

        Those plaintiffs have moved to disqualify James N. Katsiaficas, Esq. as counsel

for the defendant in this action, because, they argue that representation is affected by a

conflict arising from his prior representation of the ZBA at the administrative proceeding

1

in this case. Their central argument is that Katsiaficas is barred from representing the defendant (the Town's inhabitants) because he participated in the Board's proceedings in an adjudicatory role. *See* M.Bar.R. 3.4(g)(2)(1). That prohibition, however, arises when the lawyer "participated personally and substantially as a judge [or]. . .as a nonjudicial adjudicative officer. . . ." Here, the Town secured Katsiaficas to advise the Board as it considered the plaintiffs' appeal to that body from the Planning Board's approval of the application permit. Unlike the situation addressed in Maine Board of Bar Overseers Ethics Opinion #111 (November 1, 1990), Katsiaficas did not function as a judge or as a "nonjudicial adjudicative officer." His involvement in this action as counsel of record for the defendant therefore does not run afoul of the prohibition against representation. The plaintiffs' remaining challenges to Katsiaficas' role in this action are similarly unpersuasive.[1]

The sole substantive claim presented on this appeal is whether the Board erred when it concluded that the plaintiffs were without standing to challenge the Planning Board's decision to issue a permit that would allow the Town to build a new boat ramp. The Board's bylaws require, as one of the first issues to be addressed at a public hearing held by the Board, that the Board must "decide whether the Appellant has the right to appeal before the Board (that is, whether the Appellant is an 'aggrieved party.')" *See* defendant's supplemental record (DSR), tab 15, § VIII(D)(5).[2] The term "aggrieved party" is not defined in the Board's bylaws, but rather a definition of it appears in the Ordinance. There, an "aggrieved party" is deemed to mean:

---

[1] These other arguments advanced by the plaintiffs are that Katsiaficas will be exposed to a conflict of interest if the matter were remanded and, as argued in their reply memorandum, that his appearance in this case violates their rights to due process.

[2] It is regrettable that the parties failed to discharge their responsibility by collaborating in assembling a record on appeal, as rule 80B(e) required them to do. *See* DSR tab 8-12. Both parties ended up filing their own versions of a record on appeal. The pendency of the plaintiffs' motion to disqualify Katsiaficas does not operate to stay the parties' obligation to assemble a record cooperatively. Unfortunately, both records include material that is extrinsic to the scope of review as established in this order. The court disregards that material. Because the decision subject to review on this appeal is that of the Zoning Board of Appeals, the court considers only the transcript of the Board's hearing held on July 5, 2007; documents and materials submitted as part of that hearing; and the Board's writing findings and conclusions.

an owner of land whose property is directly or indirectly affected by the granting of a permit or variance under this Ordinance; a person whose land abuts land for which a permit or variance has been granted; or any other person or group of persons who have suffered particularized injury as a result of the granting or denial of such a permit or variance.

*See* Ordinance, § 17. After a public meeting held on July 5, 2007, the Board issued a written notice of its decision to deny the plaintiffs' appeal, finding that none of them owns property that abuts the proposed development site and that "the only injury they assert is traffic safety at the intersection of Ferry Road and Route 144." The Board further concluded that the plaintiffs

show no potential injury different from that suffered by the general public traveling over Route 144. Appellants do not show that they are aggrieved parties and therefore have no right to appeal under Section 16 of the Shoreland Zoning Ordinance.[3]

The plaintiffs urge here that the Board erred in reaching this conclusion.[4]

As a foundational matter preliminary to a consideration of the merits of the parties' contentions on appeal, the court concludes that the subject of appellate review here is the Board's conclusion that the plaintiffs were not "aggrieved parties" and therefore did not have standing to pursue an appeal to that body, rather than any decision made by the Planning Board earlier in the municipal process. "If the Board of Appeals acted as a tribunal of original jurisdiction, that is, as factfinder and decision maker, [the

_____

[3] The Board's written decision denying the appeal is included in the record on appeal submitted by the plaintiffs and in the defendant's supplement record at tab 14. The materials found in the plaintiffs' version of the record are not tabbed or numbered, making any reference problematic.

[4] The court notes that during the hearing itself, the Board's attorney advised the Board members of the meaning of an "aggrieved party." At least twice, counsel correctly read the definition of "aggrieved party," as that definition appears in the Town's ordinance. *See* T. 13, 33. However, counsel may also be seen to have suggested that an "aggrieved party" must be an abutter. *See id.* 14, 34. For two reasons, however, any error in that statement was overcome. First, the Board was correctly informed of the actual legislative language that it was bound to apply here. Second and more importantly, the Board framed its decision based on a correct formulation of that law: it did not reach its conclusion solely on the ground that none of the plaintiffs is an abutter, but rather the Board went on beyond the question of abutting properties to specify the nature of the interest underlying the plaintiffs' standing argument and then to reject that interest as insufficient.

3

court] review[s] its decision directly. If, however, the Board acted only in an appellate capacity, [the court] review[s] directly the decision of the Planning Board, or other previous tribunal, not the Board of Appeals." *Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 4, 757 A.2d 773, 775 (citation omitted).

To determine the nature of the Board's role when it concluded that the plaintiffs lacked standing, one looks first to the municipality's ordinance. *Yates v. Town of Southwest Harbor*, 2001 ME 2 ¶ 11, 763 A.2d 1168 1171. As is noted above, the Board's bylaws required the Board to "decide" if the plaintiffs were "aggrieved parties" who thus could appeal the Planning Board's decision. Section VIII(D)(6) of the Board's bylaws allows the Board to conduct either a *de novo* or appellate hearing. That provision does not specify expressly whether the hearing includes the initial determination of standing or is limited to its considerations of the merits of an appeal from a Planning Board decision. Without such a limitation and within the context of the ordinance's formulation, the court takes section VIII(D)(6) to authorize the Board to conduct a *de novo* hearing on the status of the appellants. This in fact is what the Board did. The Board entertained verbal presentations from two of the plaintiffs, took evidence and issued a written decision that includes a statement of findings and conclusions. The decision was not framed as one reviewing the Planning Board's view of the status of the plaintiffs. Rather, the Board's decision appeared to reflect its independent determination that the plaintiffs were not aggrieved parties. The approach taken by the Board bears the hallmarks of a *de novo* fact-finding process. When deciding whether plaintiffs had standing, the Board acted as a fact-finder, and consequently the court reviews its decision directly.

The court treats the issue of standing as a mixed one of law and fact. *Cf. Norris Family Associates, LLC v. Town of Phippsburg*, 2005 ME 102, ¶ 13, 879 A.2d 1007, 1012 (examining standing of an appellant to bring a rule 80B appeal). Thus, the Board's factual findings are subject to the familiar deferential standard of review. *See, e.g., Brackett v. Town of Rangeley*, 2003 ME 109, ¶ 15, 831 A.2d 422, 427 (appellate court reviews a municipal board's decision for findings not supported by substantial evidence in the record). However, the legal significance and effects of those findings are reviewed *de novo. See Norris Family Associates*, 2005 ME 102, ¶ 11, 879 A.2d at 1012.

4

At the July 5 Board hearing, Nergaard and Stern made presentations to the Board in support of their contention that they had standing to pursue an appeal from the Planning Board's decision to issue the permit to the Town. As part of that presentation, the Board was presented with a copy of the minutes generated by the Planning Board's October 10, 2006, meeting, *see* T. 15, where the Planning Board granted requests by Nergaard and Stern to be given "party status. . .because they frequently travel Rte 144 and must pass the intersection" of route 144 and the way to the dock. Nergaard stated to the Board of Appeals that he lives south of the intersection and passes by "frequently." *Id.* at 18. Nergaard also provided the Board with a copy of a 2006 Maine Department of Transportation traffic volume report.[5] *Id.* at 22. This report appears to provide information about the average number of vehicles passing over four particular points on route 144 in Westport during a 24-hour period. That daily average count, in some instances, is well in excess of 1,000. Stern's transcribed statement to the Board is more of a legal argument than an account of factual information concerning the effect of the permitted activity on any relevant interests he may have. The record also discloses that neither of the plaintiffs owns property that abuts the proposed development site. Beyond this, however, the record reveals little of the location of the plaintiffs' respective parcels of property in relation to the site of the proposed dock. Their parcels are depicted on a tax map that does not appear to have been submitted to the Board. *Id.* at 32-33.

Because the plaintiffs bore the burden of establishing that they had standing to appeal from the Planning Board's decision, they must demonstrate here that the legal and factual considerations presented to the Board compelled the Board to conclude that they were "aggrieved" persons who could maintain that appeal. *Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶ 18, 868 A.2d 161, 166. The court concludes here that the Board was not compelled to make such a finding, even when the Board's application of legal principles is considered *de novo.*

---

[5] This proffer is found on page 22 of the transcript of the July 5 Board meeting. The transcript then jumps to page 24, following a duplicate copy of page 22. Thus, page 23 is missing from the transcript. In light of the way the parties have chosen to submit a record on this appeal, *see* note 2 *supra,* the court accepts the transcript as the plaintiffs have submitted it, even though it may reveal an absence of care in its preparation.

Under the municipal criteria embodied in the Board's bylaws and the Town's ordinances, a party who asserts standing must demonstrate that he owns land that is directly or indirectly affected by the permit at issue; that his property abuts the land that is the subject of the permit; or that the permit would cause him to suffer "particularized injury." Here, the plaintiffs claim to be "aggrieved" because they stated that they travel "frequently" on the road that passes by the prospective site of the boat ramp. Because they do not own abutting property, they would need to demonstrate either that their property would be affected by the permitted development or that they would sustain particularized injury as a result. Even though the plaintiffs are not abutters, they do not need to present a "high degree of proof" of the factual basis for their claim of standing. *See Grand Beach Association, Inc. v. Town of Old Orchard Beach,* 516 A.2d 551, 553 (Me. 1986). Nonetheless, the record developed before the Board was not sufficient to compel the conclusion that any change in traffic patterns created by a new boat ramp would have an effect on the plaintiffs' properties. This leaves the question of whether the Board was compelled to find that the change in traffic is a "particularized injury" to the plaintiffs.

In the context of municipal land use cases, a person sustains a "particularized injury" "when the judgment adversely and directly affects the party's property, pecuniary or personal rights." *Charlton v. Town of Oxford,* 2001 ME 104, ¶ 30, 774 A.2d 366, 376 (citation omitted). Further, to be "particularized," the injury must "in fact [be] distinct from the harms experienced by the public at large." *Ricci v. Superintendent, Bureau of Banking,* 485 A.2d 645, 647 (Me. 1984). This latter concept applies to the standing principle applicable to land use cases. *Dept. of Environmental Protection v. Town of Otis,* 1998 ME 214, ¶ 16, 716 A.2d 1023, 1028 (Wathen, C.J., dissenting); *see also Roop v. City of Belfast,* 2007 ME 32, ¶ 10, 915 A.2d 966, 969 (holding that the plaintiff had standing to contest an amendment to a zoning ordinance, when the plaintiff owned property abutting the affected district, because "[t]he injury is also particularized to abutting landowners."). This means that, under Maine law applicable to land use proceedings, a party must demonstrate an injury flowing from the matter that is different from any injury to which others may be exposed.

The Board did not err in concluding that the plaintiffs failed to make such a showing. There is no suggestion of prospective particularized injury to the plaintiff's property interests, their pecuniary or economic interest or any "personal rights." *See Singal v. City of Bangor*, 440 A.2d 1048, 1051 (Me. 1982) (non-abutter had standing to challenge issuance of a permit authorizing a convenience store to install gas pumps, because the sale of gasoline "pose[s]. . .problems of traffic congestion, noise, fire hazards and property depreciation of some consequence."). Rather, the record suggests that the plaintiffs own property situated at an unspecified location in Westport south of the planned dock site and that they drive by the intersection site frequently. Any effect created by the construction of the dock would not be particularized to the plaintiff. Rather, the issue is common to, according to the DOT report presented to the Board, the many motorists who use route 144 daily.

The court recognizes the plaintiffs' arguments here that "particularized" means specific, rather than unique. This observation is not without merit. At least in the field of federal environmental law jurisprudence, there appears to be some movement toward reducing the weight that was given conventionally to the requirement of an individualized harm. *See, e.g., Sierra Club v. Morton*, 405 U.S. 727, 738 (1972) (recognizing a trend in environmental cases "discarding the notion that an injury that is widely shared is ipso facto not an injury sufficient to provide the basis for judicial review. . . .Aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society, and the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the legal process."). *See also Conservation Law Foundation, Inc. v. Town of Lincolnville*, 2001 Me.Super.LEXIS 26 (Maine Superior Court, Waldo Cty, AP-00-3, February 26, 2001). Here, however, the court must consider well-developed principles of Maine law identifying the requirements needed to establish standing in municipal land use appeals. The limited record presented to the Board was insufficient to compel a determination that the plaintiffs would suffer a particularized injury sufficient to confer them with standing to appeal the Planning Board's issuance of a permit authorizing the Town to construct the dock.

7

The entry shall be:

For the foregoing reasons, appeal brought on behalf of plaintiff E. Davies Ellen is dismissed.

The plaintiffs' motion to disqualify James N. Katsiaficas, Esq. as counsel for the defendant in this action is denied. The defendant's request for imposition of sanctions is denied.

The decision of the Town of Westport Zoning Board of Appeals is affirmed as to plaintiffs Paul L. Nergaard and Michael E. Stern.

Dated: July 29, 2008

_____
Justice, Maine Superior Court