INHABITANTS OF LEEDS

*vs.*

MAINE CRUSHED ROCK AND GRAVEL COMPANY.

Androscoggin.    Opinion March 8, 1928.

*Tascus Atwood*, for plaintiff.
*Frederick J. Laughlin*,
*Harry Manser*, for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, BARNES, BASSETT, PATTANGALL, JJ.

BASSETT, J. Action of debt by tax collector of the town of Leeds to collect a tax assessed on personal property described as "machinery" and employed by the defendant, a Maine corporation located at and with its principal place of business at Portland, in its gravel and sand pit in the town of Leeds. Case comes up on exceptions to the ruling of the presiding justice that the action could not be maintained.

It is admitted that the usual statutory requirements for assessing a tax and bringing a suit were complied with. The only question is, was the property taxable in Leeds.

The "machinery" included these chattels, a steam shovel, narrow gauge locomotive, two stone crushers, two conveyors, six dump carts, hoist and attachments, screen and attachments, dynamos and one Ford ton truck. The process of getting out sand and gravel is this. The material is excavated in the pit by the steam shovel, loaded into small yard cars, hauled to a hopper, from which it is taken up by a small car and dumped on a grating, where rocks exceeding two and one-half inches in size are projected to a crusher. This "oversize," as it is called, is there crushed to two and one-half inches and, upon an occasional order for stock smaller than that, there is recrushing to the smaller size. Not over twenty-five per cent of all the rock material excavated is crushed. The remainder passes through the screen into bins, into which the crushed rock is also conveyed, and thence is passed into railroad cars of the Maine Central Railroad on a spur track connecting with the main line and shipped to customers on orders received at the Portland office. The sand excavated is screened, washed and finally loaded into Maine Central cars and shipped on similar orders to destination.

The general provision of the statute for the taxation of personal property is that it "shall be assessed to the owner in the town where he is an inhabitant on the first day of each April." R. S. 1916, Chap. 10, Sec. 13, as amended by Chap. 82 of the Public Laws of 1919.

Section 14, which follows, provides certain exceptions, among which are,

"I.   All personal property employed in trade, in the erection of buildings or vessels, or in the mechanic arts, shall be taxed in the town where so employed on the first day of each April; provided, that the owner, his servant, subcontractor or agent, so employing it, occupies any store, storehouse, shop, mill, wharf, landing place or shipyard therein for the purpose of such employment."

"III. Machinery employed in any branch of manufacture, goods manufactured or unmanufactured, and real estate belonging to any corporation, except when otherwise expressly provided, shall be assessed to such corporation in the town or place where they are situated or employed:"

The plaintiff claimed that the chattels were taxable under para-graph III as "machinery employed in any branch of manufacture" and under paragraph I as "personal property employed in trade" by an owner who occupied a "landing place." The presiding jus-tice ruled they were not taxable under III nor under I, "the assess-ment being specifically upon this machinery."

We think the chattels were not taxable under either paragraph.

Arguments of counsel and the ruling of the presiding justice were first and chiefly concerned to determine whether the property came within the description of paragraph III and secondarily within the description of paragraph I.

This case does not raise the question, which one of two towns has the right to tax under one or the other paragraph, *Boothbay* v. *duPont deNemours Company*, 109 Me., 236, but whether a given town had any right to tax at all under either paragraph. Two towns might contend for the right to tax property which might be within the description of more than one paragraph. The proper way to determine under which paragraph of the enumerated ex-ceptions property is to be taxed was set forth by the court in *Boothbay* v. *duPont deNemours Company*, supra, as follows. "It was the intention of the Legislature to provide by the enumerated cases in Section 13 (Section 14 of present statutes) for the tax-ation of personal property not taxable under Section 12 (Section 13 of present statutes). To determine under which paragraph of the enumerated cases in Section 13 property shall be taxed, it should be ascertained if the property, its condition, and situation are such as are described in paragraph I of said Section. If not, are they such as are described in paragraph II, and so on until the property is described in one of the paragraphs of Section 13. When it is included within one of the paragraphs of Section 13, it is tax-able as therein stated, and all similar property similarly situated must be taxed under that paragraph, and cannot be taxed under any other. It being the intention of the Legislature by each para-graph to provide for the taxation of the property therein men-tioned, it follows that when the property is included within the cases mentioned in one of the paragraphs, it shall be taxed under that section and cannot be taxed under any other."

We therefore turn first to paragraph I.

The word "machinery" which is expressly found in paragraph III does not determine that the property was assessed under that paragraph. Machinery may be actually articles of "trade" of the owner. It was "personal property" as appears here.

But the chattels were not "employed in trade." The property taxed here was not the stone and gravel which was sold but machinery for putting it into condition to be sold. If it could be said that the machinery thereby was "employed in trade," it would not be, under paragraph I, as regards taxation, in any different position from the sand and gravel. Our court has repeatedly held, *New Limerick* v. *Watson*, 98 Me., 379; *McCann* v. *Minot*, 107 Me., 393; *Morton* v. *Watson*, 115 Me., 70; *Lumber Company* v. *Machias*, 122 Me., 304, that employment in trade under this paragraph means trade in the town where it is when prepared for market. Where the evidence, as here, does not disclose any local market or any intent or expectation to sell locally and that the things, when prepared for market, are to be sold, not where prepared but in the town where the owner's main business is located, the property is not "employed in trade" in the town where it is when prepared.

It is not necessary to decide whether these chattels were employed "in the mechanic arts" for, if they were, the owner did not occupy any "mill" or "landing place" in Leeds within the meaning of the statute. If it be claimed that the chattels, some or all of them taken together, were a "mill," they cannot "at the same time serve as personal property employed and as the building or place in which it is employed." "The personal property which may or may not be subject of taxation under the exception is movable property wholly distinct from the 'store, shop, mill, wharf, landing place or shipyard' which by virtue of the proviso must be occupied." *Norway* v. *Willis*, 105 Me., 54.

Nor was there a "landing place" within the meaning of the statute. The words were defined in *McCann* v. *Minot*, supra, a log case. "A landing place is a place where logs (and it may be other things) are collected and deposited for transportation or shipment from that place, whether it be by water or rail." In *Lumber Company* v. *Machias*, supra, also a log case, use of the word "include" (p. 307) would imply that landing place includes logs but is not confined to them.

But the machinery was not the things "collected and deposited" in the alleged landing place here. The rock and sand were what corresponded to the logs which, in the cases cited, were the property in the landing place and taxed. The alleged landing place was a part of defendant's premises, the so-called pit, where the work went on and where the sand and gravel at the completion of the preparation were deposited. They were landed in that remote sense in which the finished product of any process conducted in a given place is there deposited pending further movement in its disposition. They were deposited but not collected in the meaning of the statute which for landing place connotes both collecting and depositing.

We therefore decide this machinery could not be taxed under paragraph I and turn to paragraph III.

There was no contention that the word "machinery" did not cover all of the different chattels, and it is not necessary therefore to raise such question. For this decision, we assume it does include all. But we do not think that the machinery was "employed in any branch of manufacture." The meaning of the word "manufacture" has been before the courts in various applications including provisions of statutes for taxation. This line of distinction has been drawn which we think to be correct. Application of labor to an article either by hand or mechanism does not make the article necessarily a manufactured article. To make an article manufactured, the application of the labor must result in a new and different article with a distinctive name, character or use.

It was therefore held that a corporation quarrying, crushing, preparing, and marketing limestone in different sizes was not a "manufacturing" corporation. "No new article was produced by the relator. It simply took raw material which had been created by the process of nature and broke it into convenient sizes for use and sale. The reduced sizes were the raw material no less than when blasted in rock from the cliff. The relator expended no labor in fashioning the pieces. When sold they were in precisely the conditions in which they left the breaker. Had the existence of the stone been due to the agency of the relator, or an article have been created by its labor or the addition of other substances producing an article having a different character and use, a very different ques-

tion would be presented." *People ex rel. Tompkins Cove Stone Co.* v. *Saxe et al,* 162 N. Y. Supp., 408, 176 App. Div. 1, reaffirmed on appeal, 221 N. Y., 601.

So it was held a corporation engaged in quarrying, crushing, preparing, and marketing stone by breaking it into pieces and sorting by screens was not engaged in manufacturing. "The rock still remains rock. The only difference is in the size of the portions and in this natural condition without the application of any art or process to change the form or appearance of the broken pieces, the same are sold in the market." *Commonwealth* v. *John T. Dyer Quarry Co.,* 95 Atl., 797 (Pa.).

So crushing and grinding rock into sand of specified grades of fineness sometimes colored by admixture of clay and used for molding in steel trade and for concrete in building was held not "manufacturing." "The pieces are sold as they come from the crusher without any attempt to remove the irregularities of the edges or make the pieces of uniform shape. . . . The fact that clay is sometimes added to the sand when colored silica is desired does not in our opinion change the situation." *Commonwealth* v. *Welsh Mountain Mining, etc., Co.,* 108 Atl., 722.

So it was held that cleaning off the outer layer of shells by acid and grinding off the second layer by an emery wheel so as to expose the inner layer and all intended to be sold as shells for ornament was not a "manufacture of shells." "They were still shells. They had not been manufactured into a new and different article having a distinctive name, character or use from that of a shell." *Hartranft* v. *Wiegmann,* 121 U. S., 609.

And so machinery employed in the business of quarrying and breaking stone, to be used in macadamizing roads and for similar purposes was held not to be taxable as being "employed in manufacturing." "Quarrying and dressing granite could hardly be said to be manufacturing it, though molding clay into different sizes and shapes and then burning it fairly may be said to be manufacturing brick. Still less could simply crushing granite into smaller and smaller pieces be said to constitute manufacturing, as that word is ordinarily used, though there is a remote sense in which it may be true." *Wellington* v. *Belmont,* 164 Mass., 142. This case is quite on all fours with the instant case.

We therefore decide this machinery could not be taxed under paragraph III.

The exceptions to the ruling of the presiding justice were not well taken. The entry must therefore be

*Exceptions overruled.*