**PRIDE'S CORNER CONCERNED CITIZENS ASSOCIATION et al.**

v.

**The WESTBROOK BOARD OF ZONING APPEALS and the Portland Water District.**

Supreme Judicial Court of Maine.

March 6, 1979.

Lund, Wilk, Scott & Goodall by Clifford H. Goodall (orally), Augusta, for plaintiffs.

Verrill & Dana by Michael T. Healy (orally), Charles A. Harvey, Jr., Portland, for Water Dist.

Gagan & Desmond by James E. Gagan (orally), Michael D. Cooper, Westbrook, for Westbrook Bd. of Zoning Appeals.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD and GODFREY, JJ.

ARCHIBALD, Justice.

Reduced to its essential procedural status, this becomes an appeal by one plaintiff, namely, Basil R. Swan, from a decision of the Superior Court in an 80B proceeding affirming a decision of the Westbrook Board of Zoning Appeals (Board) in which the Portland Water District (District) was granted a special exception allowing it to construct and operate a sludge composting facility on its Westbrook property. Mr. Swan likewise owned property in Westbrook which abutted that of the District.

We deny the appeal.

Before discussing the merits, we must determine whether Mr. Swan had the necessary standing to appeal from the Superior Court decision.[1] Both the Board and the

---

1. Pride's Corner Concerned Citizens Association is claimed to be an unincorporated association of residents of Pride's Corner. A document captioned a petition to "reconsider and deny," addressed to the Board of Zoning Appeals, was signed by a legal firm said to rep-

District argue that (a) Mr. Swan did not formally become a party before the Board at its hearings, and (b) he demonstrated no particularized injury or damage as a result of the decision reached by the Board.

30 M.R.S.A. § 2411(3)(F) provides:

An appeal may be taken, within 30 days after the decision is rendered, by any *party* to Superior Court from any order, relief or denial in accordance with the Maine Rules of Civil Procedure, Rule 80B. The hearing before the Superior Court shall be without a jury. [emphasis supplied]

The record furnished on appeal makes it apparent that Mr. Swan did, in fact, appear on October 12, 1977, in person before the Board at the initial hearing on the District's request for a special exception to authorize the construction of the composting facility. A subsequent meeting was held on October 26, 1977, at which Mr. Swan was identified as "one of 96 citizens from the Pride's Corner area." The record of these meetings indicates that he propounded several questions which were pertinent to the issue being considered by the Board. Following the October 26th meeting the Board indicated its intent to grant the special exception but subject to "conditions to be worked out to the correct legal language."

Subsequently, a petition to reconsider and deny was filed with the Board and Mr. Swan was identified therein as one of the petitioners. A hearing was held on this petition on November 16, 1977, which resulted in the formal granting of the special exception but subject to several enumerated conditions.[2] The 80B proceeding was initiated by complaint dated November 23, 1977, but premised on the previously described proceeding before the Board. One of the plaintiffs was Basil R. Swan. A justice of the Superior Court affirmed the decision of the Westbrook Board of Zoning Appeals, from which decision this appeal ensued.

District-appellee asserts that having failed to enter an appearance, request and be granted the right to fully participate in the proceeding, Basil Swan cannot be a "party" within the meaning of Section 2411(3)(F). We disagree.

Within a statutory scheme a word should be construed according to its usage as a legal term of art only when it appears that such a construction was legislatively intended. *See Town of Arundel v. Swain,* Me., 374 A.2d 317 (1977); *Davis v. State,* Me., 306 A.2d 127 (1973). For two reasons we do not believe that the legislature intended "party" within Section 2411(3)(F) to be construed in terms of Rules 17–25, M.R. Civ.P. First, as the record in this case clearly indicates, matters before a local board of appeals are conducted in a fashion far less formal than court proceedings or a hearing before the Public Utilities Commission.[3] To superimpose a formal structure of appearance, withdrawal and substitution of parties upon an otherwise open proceeding seems purposeless and unrealistic. This conclusion is reinforced by an obvious legislative attempt to allow appeals by persons aggrieved by the action of various administrative agencies. *See, e. g., Matter of Lappie,* Me., 377 A.2d 441, 442 n. 3. To construe "party" within Section 2411(3)(F) to

resent the association, and in this petition thirty individuals were identified, of whom one was Basil R. Swan. There was no appeal from the decision of the Superior Court dismissing the 80B complaint initiated by the association as to all members thereof except Mr. Swan.

2. The Board made its grant of the special exception subject to its right to oversee and supervise the construction and the actual operation of the composting facility. These reservations included a limitation on the hours during which the facility could be operated, limiting traffic control at the site, the right to test the quality of ground water, requiring the District to obtain all necessary state and federal permits, granting the City engineer the right to make periodic inspections and, finally, providing for another hearing to be held in a year to review the operation.

3. In requiring notification of owners of property within 500 feet of the property involved or abutting the property for which the appeal is taken, the Westbrook Zoning Ordinance recognized the appellant, an abutting land owner, as a proper party. Notice of the Board proceedings was, in fact, mailed to Mr. Swan.

mean any more than a participant in the proceedings who is aggrieved by the action of the appeals board would be contrary to other obvious expressions of legislative intent.[4]

As a "party" within the context of Section 2411(3)(F), Mr. Swan must also suffer a particularized injury from the order of the Board in order to have standing to seek judicial review of that order. Since Mr. Swan is an abutting land owner, the sludge disposal operation could conceivably pose problems of seepage, odors, noise from traffic, and the pollution of surface waters. Mr. Swan, thus, had a basis for alleging grievance and is, therefore, "a person having standing to seek judicial review of the Board's order by virtue of this potential for particularized injury." *Matter of Lappie, supra* at 443.

Having determined that Mr. Swan had standing to appeal, we may now examine the record in its totality to determine if the Board acted properly in granting the application of the District. *Sierra Club v. Morton,* 405 U.S. 727, 737, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

The authority of the District is clearly delineated by the legislative act which created it. Chapter 84, Private and Special Laws of 1975, chartered the Portland Water District, constituting it a public municipal corporation with the right to operate in several municipalities in Cumberland County, including Westbrook. Within its purposes is authorization to "provide facilities for the handling . . . of . . . sewage consisting of domestic, commercial, municipal and industrial wastes." The same act also authorized it to provide "treatment facilities" for "transmission and *disposal* of waste water and *sewage* received from municipal collection systems." [5] (emphasis supplied)

Section 3 of the enabling act authorized the District, inter alia, to "purify, discharge and *dispose* of all waste water and *sewage* collected by the participating municipalities." (emphasis supplied) Section 3 continues: "All incidental powers, rights, and privileges necessary to the accomplishment of the object[ives] herein set forth are granted to the district."

Reverting for a moment to the facts, the District owns a considerable acreage in Westbrook, some of which is in the residential zone in which Mr. Swan resides. The proposed composting facility was to be constructed within this area. The record discloses that sludge is a necessary by-product of the operation of a sewage treatment facility and must be disposed of in some non-pollutant manner. The District planned to remove the sludge from the treatment plant, convey it to the composting site and treat it in such a manner that it would thereafter become available as a soil conditioner. This was to be accomplished by mixing the sludge with certain quantities of wood chips which would thereafter be removed. The addition of the wood chips enhanced the natural process of composting and was effective in the elimination of odor. When the wood chips were removed the resultant compost could be utilized beneficially as a soil conditioner.

The Westbrook zoning ordinance allowed "public and private utility uses" in residential districts as a special exception subject to approval by the Zoning Board of Appeals. The ordinance gives no special or limiting definition of "public and private utility uses." Therefore, we are free to apply a common and generally accepted meaning to this expression. *Robinson v. Board of Appeals, Town of Kennebunk,* Me., 356 A.2d 196, 199 (1976).

The appellant does not argue that sludge is not a by-product of an appropriate utility function, namely, sewage treatment. However, he does contend that converting sludge into a usable soil conditioner goes

---

4. Whether a person is a "participant" in a particular administrative proceeding will depend on the unique facts there developed, which will rarely parallel the background circumstances of this case.

5. Private & Special Laws of 1975, ch. 84, § 2(B).

beyond a utility use and becomes a manufacturing process, thus not being an appropriate function in a residential zone. Appellant relies on *Leeds v. Gravel Company,* 127 Me. 51, 141 A. 73 (1928). While we may agree that there is sometimes a fine line which distinguishes manufacturing from the mere conversion of a product into usable form, *Leeds* is not appropriate to the facts in this record. *Leeds* held "to make an article manufactured, the application of the labor must result in a new and different article with a distinctive name, character, or use." 127 Me. at 56, 141 A. at 75. Applying this definition to the facts it was there held that crushing stone or screening gravel to make the same usable for various purposes was not a manufacturing process since all that was done was taking the same raw material and, without changing its chemical constituency, making it usable for such things as paving highways. "The reduced sizes were the raw material no less than when blasted in rock form from the cliff." 127 Me. at 56, 141 A. at 75.

As we understand this record, the addition of the wood chips and their ultimate removal from the sludge made it possible for the substance to become compost and thus usable. We may assume for purposes of this case that this process did in some degree alter the raw material from its original condition.

■■ The foregoing conclusion does not alter the result reached by the justice below. The Legislature saw fit to define the utility purposes for this particular District and authorized it to execute the same. An appropriate utility use, therefore, as legislatively defined and as not limited by the Westbrook Zoning ordinance, was to provide for treatment facilities aimed at the ultimate disposal of sewage, including sludge. This minor type of manufacturing process (if such it be) is certainly incidental to the general obligation to treat and dispose of sewage, recalling that the enabling act gave the District "all incidental powers . . . necessary to the accomplishment of [its objectives]."

The entry is:

Appeal denied.

Judgment affirmed.

DELAHANTY and NICHOLS, JJ., did not sit.