STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, ss.                                    DOCKET NO. AP-09-1
                                                  WRA - PEN 2/3, 2010

THE FRIENDS OF LINCOLN LAKES        )
and DON SMITH,                      )
                    Plaintiffs      )
                                    )
        v.                          )
                                    )
TOWN OF LINCOLN BOARD               )
OF APPEALS,                         )                ORDER
                                    )
                    Respondent      )
and                                 )
                                    )
EVERGREEN WINDPOWER III,            )
                                    )
                    Intervenor      )

Pursuant to M.R.Civ.P. 80B, plaintiff's have appealed the January 8, 2009 decision of

the Town of Lincoln Board of Appeals that it lacked sufficient evidence to find that the

Friends of Lincoln Lakes ("FOLL") had a right to appear before the Board. FOLL had

Appealed the Town of Lincoln Planning Board's approval of the application of Evergreen

Windpower III for construction of the Rollins Wind Project. Evergreen has intervened by

agreement, and all parties have briefed and argued the appeal.

I.      Background and Procedural History

        On November 4, 2008, Evergreen Windpower III, LLC ("Evergreen") submitted

an application to the Town of Lincoln Planning Board ("Planning Board") for a permit to

construct a portion of the Rollins Wind Project ("Project"). (Record Tab 7 at 2)

[hereinafter RT ___ at ___]. The Project includes a 60-megawatt wind facility

consisting of 40 wind turbines and approximately 9 miles of 115-kilovolt transmission

1

line. As indicated by intervenor, Evergreen, the Project proposal includes plans for the construction and maintenance of wind-power facilities in several municipalities in southeastern Penobscot County, including the Town of Lincoln ("Town"). The portion of the Project to be constructed in Lincoln includes 19 wind turbines, an operation and maintenance building, electrical collector lines, and access roads. After receiving public comments on the Project, the Town of Lincoln Planning Board ("Planning Board") approved Evergreen's permit application on December 1, 2008. (RT 7 at 1-3.) A group of individuals opposing the construction of the Project, organized under the name Friends of Lincoln Lakes ("FOLL"), filed an administrative appeal with the Appeals Board of the Town of Lincoln ("Appeals Board") on December 15, 2008. (RT 8.) After conducting a hearing on January 8, 2009, the Appeals Board dismissed FOLL's appeal for reasons that are the equivalent to lack of standing. (RT 3 at 13.) The Appeals Board issued a written decision on January 28 2009 that included findings of fact and conclusions of law. (RT 4.) FOLL filed a complaint with the Superior Court on February 8, 2009, requesting the Court to review the Appeals Board's decision under M.R. Civ. P. 80B.

A.    Town Council[1] and Planning Board Meetings

Prior to receiving the Evergreen application, the Town Council and the Planning Board received public comments concerning the permit for the Project. During an October 20, 2008, Town Council meeting, council members had a discussion with the

---

[1] The Defendant argues that Court should formally disregard the administrative record produced by meetings before the Town Council because the "consideration of a moratorium is entirely separate from the Planning Board's consideration of Evergreen's application." (Def. Lincoln's Br. in Opp. 4.) In short, the Court does not agree. A decision by the Town Council to initiate moratorium proceedings would have paralyzed the Planning Board. Because the Planning Board was to provide a recommendation concerning the adequacy of the existing Town Ordinance to address the Evergreen permit, and the Town Council's determination on the moratorium issue necessarily dictated whether the Planning Board could continue with its review of the Evergreen permit, the actions of the two entities were inextricably linked. Therefore, the meetings before the Town Council are properly part of the administrative record.

"Friends of Rollins Ridge." Among this group, who were described as people who lived in or owned property in Lincoln, Harry Epp, Gary Steinberg, and Bradbury Blake advocated that the Town initiate an emergency moratorium for the Project based on concerns over noise pollution, decreased tourism, aesthetic issues, and alleged health problems associated with infrasonic sound. (RT 13 at 2.) The Town Attorney, Timothy Woodcock, advised the Town of the administrative processes required to institute a moratorium on the Project. *See* 30-A M.R.S.A. § 4356(1). In concluding the discussion with the "Friends of Rollins Ridge," the Town Counsel chose not to formally initiate the moratorium process and decided that the Planning Board should review the Project. (RT 13 at 3.)

The Planning Board conducted its own pre-submission public meeting on October 21, 2008, at which an open public forum was held. During that meeting, members of the public, presumably those with ties to Lincoln, offered various comments on the proposed Project. (RT 5 at 2-3.) The administrative record, at this point, is bereft of any mention of Friends of Lincoln Lake, or FOLL, as an organization, association or other group. *Id.* Additionally, the meeting minutes indicate that the persons offering comment did not identify themselves as members of FOLL and there is no mention of the Friends of Rollins Ridge of the Friends of Lincoln Lakes during this meeting. *Id.* Ultimately, the Planning Board reviewed the adequacy of the existing Ordinance to review the Project and found the provisions of the Ordinance sufficient to conduct a thorough review, and after reading pertinent provisions of the Ordinance, decided not to recommend a moratorium on the Project to the Lincoln Town Council. (RT 5 at 4.) The Planning Board adopted the measure by a vote of 7-0. *Id.*

Subsequently, the Town Council met again on November 10, 2009. During that meeting, Peter Phinney, speaking on behalf of the Planning Board, acknowledged that the Planning Board had reviewed the Lincoln Ordinance and found it adequate to undertake a review of the Project. (RT 14 at 1.). Phinney conveyed to the Town Council that the Planning Board "had heard the Friends of Lincoln Lakes' request for a moratorium" and voted against it, 7-0. *Id.* The Town Council then opened the floor to discussion and again received comments from Gary Steinberg and Harry Epp, among others, advocating a moratorium based on concerns over health issues, environmental impacts, noise and visual pollution, property devaluation, and concerns over the Project's overall benefit to the town. (RT 14 at 2-3.) There is no indication in the minutes that the Town Council acknowledged the dissenting speakers as members of FOLL or that the speakers identified themselves as members of FOLL. *Id.* The Town Council called an end to the open forum without instituting, or calling for a vote on moratorium procedure. *Id.* at 3.

After Evergreen formally submitted its permit application for the Project, the Planning Board held another public hearing on November 17, 2008. The Planning Board again received public comments. Among the many speakers, the Planning Board again heard from Gary Steinberg and Brad Blake, both opponents of the Project.[2] (RT 6 at 2-5.) The only mention of FOLL during the November Planning Board meeting came from Mr. Blake's statement that FOLL would like to present expert testimony to the Planning Board concerning problems associated with wind turbines. *Id.* at 4. In concluding the meeting, members of the Planning Board agreed to reconvene in two weeks to determine whether to grant the Evergreen permit so voting board members would have adequate

---

[2] Steinberg and Blake would later become two of three persons who "incorporated" FOLL. (RT 11 at 2.)

time to weigh public comments, analyze the various environmental studies required to move the Project forward, and determine whether the Project could conform with provisions in the existing Town Ordinance. *Id.* at 5-6. The Planning Board adjourned the meeting by agreeing to meet on December 1, 2009, to coordinate the final disposition of the Project. *Id.* Shortly before adjourning the meeting, Peter Phinney, the Planning Board Chairman, specifically stated that any "aggrieved party could appeal a decision by the Planning Board to the Board of Appeals." (RT 6 at 5.)

On December 1, 2008, the Planning Board convened a special meeting to vote on Evergreen's permit application for the Project. The Planning Board set forth the factual findings to support its decision, and ultimately, by a vote of 6-1, approved the site plan for that portion of the Project to be constructed in Lincoln. (RT 7 at 2-3.)

B.      FOLL's Appeal and the Appeals Board Meeting

On December 15, 2008, FOLL submitted an application for an administrative appeal with the Lincoln Appeals Board. ( RT 8.) The application, although unsigned by any "applicant," was apparently delivered by Gary Steinberg and Donald Thomas with an attached "Written Notice of Appeal" prepared by FOLL counsel, Lynne A. Williams. *Id.* The written notice specifically identified FOLL as an unincorporated "association" and challenged the validity of the Planning Board's site plan approval for the development of the Project on two grounds.

On January 8, 2009, the Appeals Board held a hearing to address FOLL's administrative appeal. During the hearing, the Appeals Board focused exclusively on the preliminary question of whether FOLL, as its own discrete entity, had standing to pursue an administrative appeal. (RT 3 at 2.) An extensive discussion concerning FOLL's

5

participation in the administrative process, membership, and legal identity (before, during, and after filing the December 15, 2008 administrative appeal) ensued. *Id.* at 2-14. The January 8, 2009, Appeals Board meeting adjourned after a 4-2 vote dismissing the FOLL appeal based on FOLL's failure to provide sufficient evidence to demonstrate that the group had a right to appear before the Appeals Board. On January 28, 2009, the Appeals Board issued findings of fact and authored a decision formally dismissing FOLL's appeal for lack of standing. (RT 4 at 1-5.)

II.     Standards of Review

The Lincoln Appeals Board acted as a tribunal of original jurisdiction and conducted a de novo fact-finding process to decide whether FOLL had standing to appeal the Planning Board's December 1, 2008, decision to grant the Evergreen permit application. When a zoning board of appeals acts as the tribunal of original jurisdiction as both fact finder and decision maker, [the Superior Court will] review its decision directly for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *Brackett v. Town of Rangeley*, 2003 ME 109, ¶ 15, 831 A.2d 422, 427 (*citing Yates v. Town of Southwest Harbor*, 2001 ME 2, P10, 763 A.2d 1168, 1171).

"The question of whether a party has standing to bring an administrative appeal depends on the language of the governing ordinance." *Nergaard v. Town of Westport Island*, 2009 ME 56, ¶ 12, 973 A.2d 735, 739 (quoting *Nelson v. Bayroot, LLC,* 2008 ME 91, ¶ 9, 953 A.2d 378, 381). The interpretation of the Lincoln Ordinance and accompanying municipal code are questions of law that warrant de novo review on 80B appeal to the Superior Court. *Stewart v. Town of Sedgewick*, 2002 ME 81, ¶ 6, 797 A.2d 27, 29). Furthermore, this Court "examine[s] the plain meaning of the language of the

ordinance, and . . . construe[s] its terms reasonably in light of the purposes and objectives of the ordinance and its general structure." *Id.*

III.    Discussion

From the outset, the Court recognizes that the discrete issue on 80B appeal, as framed by the Plaintiffs, is whether the Appeals Board's denial of standing to the FOLL and the consequent dismissal of the group's administrative appeal of the Project reflects an abuse of discretion or is otherwise "unlawful, arbitrary, capricious, or unreasonable." *Senders v. Town of Columbia Falls*, 647 A.2d 93, 94 (Me. 1994). On the facts of this case, the Court finds that the Lincoln Board of Appeals did not err as a matter or law, abuse is discretion, or reach findings not supported by substantial evidence in denying standing to FOLL. Furthermore, this appeal to the Superior Court must fail because neither the Friends of Lincoln Lakes nor Don Smith have standing to sustain the instant Rule 80B action.

A.    The Municipal Code of the Town of Lincoln

State law enables Maine municipalities to establish zoning boards of appeal. 30-A M.R.S.A. § 2691(1). A board of appeals established under the legislative scheme maintains limited jurisdiction to hear "any appeal by any person, affected directly or indirectly, from any decision order, regulation or failure to act of any board, officer agency or other body when an appeal is necessary, proper or required." 30-A M.R.S.A. § 2691(4). The statutory definition of "person" includes an "individual, corporation, partnership, firm, organization, or other legal entity." 30-A MRSA § 2001(14). Consistent with these legislative mandates, the Town of Lincoln established the Appeals

7

Board and vested it with authority to "hear and decide [administrative] appeals where it is alleged that the there was an error in any order, requirement, decision, or determination made by, or failure to act by . . . (the) Planning Board in the enforcement or administration of this ordinance." Ordinance § 1313.15(G). The Ordinance directs that only an "aggrieved party" may lodge an administrative appeal of a Planning Board Decision with the Board of Appeals. *See* Ordinance § 1311.6(L)(2) ("The Board of Appeals may, upon written application of an aggrieved party and after public notice, hear appeals from determinations of the Planning Board or the Code Enforcement Officer in the administration of this Ordinance."); Ordinance § 1313.15(G)(3)(a)(1) ("An administrative or variance appeal may be taken to the Board of Appeals by an aggrieved party from any decision of the Planning Board . . . .") . The Ordinance specifically defines the term "aggrieved party" as:

> An owner of land whose property is directly or indirectly affected by the granting or denial of a permit or variance under this Ordinance; a person whose land abuts land for which a permit or variance has been granted; or any other person or group of persons who have suffered particularized injury as a result of the granting or denial of such a permit or variance.

*Id.* § 1313.16(B). Furthermore, the Ordinance defines the term "person," as used in the municipal code, to include a "firm, association, organization, partnership, trust, company, or corporation, as well as individual." Ordinance 1313.16(A)(1)(a).

Consonant with the above legislative and administrative provisions, the Lincoln Appeals Board also employs its own procedural rules in conducting its business. The Board of Appeals follows a procedural paradigm that includes threshold determinations of whether the Board "has jurisdiction over the appeal" and whether "the applicant has a

8

right to appear before the board." Procedural Rules, Appeals Board of the Town of Lincoln § (V)(B)(4)-(5). The Appeals Board's procedural rules, coupled with language of the governing Ordinance, embody the general principles of "standing" as that term applies in the context of administrative appeals before a municipal body. *See Nergaard v. Town of Westport Island*, 2009 ME 56, ¶ 12, 973 A.2d 735, 739 (noting that the "question of whether a party has standing to bring an administrative appeal depends on the language of the governing ordinance")(citation omitted).[3]

### B.   FOLL's Administrative Appeal

#### 1.   FOLL's Incorporation

As a threshold matter, comments by the Town Attorney, Timothy C.Woodcock, triggered the Appeals Board's discussion of FOLL's "legal identity" and whether an "unincorporated association" that later incorporated after filing an administrative appeal could maintain an action before the Appeals Board. (Def. Town of Lincoln's Br. in Opp. 4-5). The record is clear that FOLL did not formally incorporate until December 31, 2008, nearly fifteen days after filing an appeal with the Appeals Board. The Law Court has provided that "[g]enerally, an unincorporated association does not have capacity to sue or be sued in its own name, absent specific statutory authorization." *Tisdale v. Rawson*, 2003 ME 68, ¶ 15, 822 A.2d 1136, 1140 (quoting *Gulick v. Bd. of Envtl. Prot.*, 42 A.2d 1202, 1202-03 n.1 (Me. 1981). Presumably, FOLL incorporated as a domestic

---

[3] The Court recognizes that the parties did not have the benefit of the Law Court's June 2, 2009, opinion in *Nergaard* at the time they filed their briefs. The discussion in *Nergaard*, however, does nothing to augment the general standing principles advanced by the Law Court in *Norris Family Assoc., LLC v. Town of Phippsburg*, 2005 ME 102, ¶ 13, 879 A.2d 1007, 1012: "A party's standing to bring a Rule 80B appeal is a function of whether the party participated in the administrative process and whether the party will suffer a particularized injury . . . ." FOLL's Memorandum of Law specifically cites *Norris* for the proposition that the Law court has traditionally recognized a "broad view of standing" in the context of reviewing administrative action on 80B appeal. (Pl.'s Mem. of Law 5.) The *Nergaard* case simply focuses the standing inquiry at the administrative appellate level.

non-profit corporation for the specific purpose of avoiding the *Tisdale* rule. *See also Morrill's Corner Neighborhood Assoc. v. City of Portland*, 2005 WL 2727085, \*2 (Me. Super 2005) (utilizing *Tisdale* to dismiss an unincorporated association as a party on 80B appeal). The Town and Evergreen cite *Tisdale* for the proposition that FOLL had no legal capacity to lodge an administrative appeal (in its own name) with the Appeals Board because it was an unincorporated association at the time it filed the December 15, 2008, administrative appeal. (Def. Lincoln's Br. in Opp. 2) (adopting the arguments in Evergreen's Memorandum of Law); (Party-in-Interest Evergreen's Br. in Opp. 8-12). Based on the Court's review of *Nergaard*, and other general principles of standing at the municipal appeal level, *Tisdale* is not dispositive of whether FOLL, in its unincorporated form, had the legal capacity to lodge an administrative appeal. For two reasons, this Court concludes that FOLL's lack of incorporation was not a bar to its appeal to the Appeals Board.

First, *Tisdale* addressed the issue of whether an unincorporated association could maintain a suit in court for money damages. This court is not aware of statutory or case law authority for the proposition that the capacity requirements for maintaining an administrative appeal before a municipal appeals board are identical to the capacity requirements for maintaining a law suit in a court of law. This would be a distinction without a difference in most situations in which the appeals board decision was the subject of an 80B appeal because the lack of incorporation could be fatal to the appeal to the Superior Court. In this case, however, the latter deficiency was cured by subsequent incorporation.

Second, as noted in *Nergaard,* 2009 ME 56, ¶ 12, 973 A.2d at 739, "whether a party has standing to bring an administrative appeal before an appeals board depends on the language of the governing ordinance." In this case, the Ordinance's definition of "aggrieved party" embraces, among other entities, "a group of persons that have suffered a particularized injury." Ordinance § 1313.16(B). The Ordinance then defines the word "person" to include an "association." Ordinance § 1313.16(A)(1)(a). The Ordinance itself does not distinguish between "incorporated" or "unincorporated" associations, and a reasonable construction of the Ordinance's provisions suggests that an unincorporated association may achieve "aggrieved party" status so long as the group can affirmatively demonstrate a particularized injury. This analysis would seem to comport with the Law Court's broad view of standing at municipal appeals level:

> [A]s the record in this case clearly indicates, matters before a local zoning board appeals are conducted in a fashion far less formal than court proceedings or hearings . . . . To superimpose a formal structure of appearance, withdrawal, and substitution of parties upon otherwise open proceeding seems purposeless and unrealistic. This conclusion is reinforced by an obvious legislative attempt to allow appeals by persons aggrieved by the action of various administrative agencies.

*Pride's Corner Concerned Citizens Ass'n v. Westbrook Board of Zoning Appeals,* 398 A.2d 415, 417 (Me. 1979) (citation omitted). Thus, this Court upholds FOLL's ability to lodge an administrative appeal as an unincorporated association at the time of the December 15, 2008 filing, despite *Tisdale.* Of course, FOLL must meet clearly defined "standing" requirements to successfully appeal the decisions of the Planning Board and Appeals Board, respectively.

11

## 2. Standing Before the Appeals Board, Party Status

As an "association" of citizens concerned about the development of the Project, FOLL bore the burden of proving that it met the definition of an "aggrieved party" at the time of the January 8, 2009, hearing before the Town Appeals Board. *Cf. Nergaard,* 2009 ME 56, ¶ 12, 973 A.2d at 739. The Appeals Board faced the difficult task of ascertaining exactly which organizational manifestation of FOLL, if any, had achieved party status at any time before or after the Planning Board's December 1, 2009, decision. (*See* Def.'s Town of Lincoln Lakes Br. in Opp. 7) ("Assuming the Board could do so, the Board was required to ascertain whether the same Applicant [that filed the administrative appeal] participated in the either of two public meeting [sic] held by the Planning Board on November 17, 2008, and December 1, 2008.") The Law Court has expressly held that "[t]o establish standing [in the context of an appeal to an municipal administrative authority], one must demonstrate not only that he or she had party status at the administrative proceedings, but, *in addition,* that he or she has suffered a particularized injury or harm." *Nergaard,* 2009 ME 56, ¶ 16, 973 A.2d at 740 (citing *Norris Family Assoc., LLC v. Town of Phippsburg,* 2005 ME 102, ¶ 13, 879 A.2d 1007, 1012) (emphasis in original). FOLL essentially concludes that because the Planning Board and the Town Council "recognized" FOLL as an association of individuals opposed to the Evergreen Project, the Appeals Board had no justifiable reason to question the legal identity of the group.[4] FOLL's argument that it had achieved "party status" before the

---

[4] The claim advanced by FOLL here is strikingly similar to the argument made by appellants in *Nergaard.* In that case, the appellants on 80B appeal argued, in part, that they had achieved party status simply because the Planning Board, in proceedings before an appeal, "had granted them party status." *Nergaard,* 2009 ME 56, ¶ 15, 973 A.2d at 740. The Law Court disagreed, noting that just because the appellants had been granted party status by a planning board during its preliminary proceedings "does not demonstrate that

Town Council and the before the Planning Board, and therefore, before the Appeals Board, is unraveled by the administrative record.

FOLL unnecessarily complicated the issue of its party status before the Board of Appeals by both changing its organizational name and amending its organizational status during the course of the administrative proceedings. From its inception in the summer of 2008, FOLL was apparently known initially as the "Friends of Rollins Ridge." (Compl. ¶ 2.) Plaintiff claims that on or about October 14, 2008, the Friends of Rollins Ridge became, either officially or unofficially, the "Friends of Lincoln Lakes," or FOLL.[5] (Compl. ¶ 3.) The group presumably maintained the FOLL namesake throughout the Planning Board hearings on October 21, 2008, November 17, 2008 and December 1, 2008. After the Planning Board approved Evergreen's permit application for the Project, Gary Steinberg and Donald Thomas submitted, on behalf of FOLL, in its pre-incorporated form, an application for an administrative appeal to the Appeals Board. (RT 8.) The application itself failed to designate an "applicant," as would normally be indicated on the signature line, but included a written Notice of Appeal authored by Attorney Williams as counsel for FOLL. (RT 8.) Subsequently, on December 31, 2008, FOLL filed Articles of Incorporation with the State of Maine formally organizing as a domestic nonprofit corporation with the purpose of preserving the environmental integrity of the Lincoln Lakes Region. (RT 12 at 1.)

---

[the appellants] are 'aggrieved parties' entitling them to appeal to the Zoning Board." *Id.* ¶ 16, 973 A.2d at 740.

[5] Whether the "Friends of Rollins Ridge" had formally changed its name to FOLL as of October 14, 2008, is disputed by the record. (Compl. ¶ 4.) The recorded Minutes from the Town Council Meeting of October 20, 2008, indicate that the Town Council received testimony from the "Friends of Rollins Ridge" during a public debate concerning whether the Town should initiate a moratorium on the proposed Project. (RT 13 at 2.)

At the January 8, 2009, proceeding before the Appeals Board, Attorney Williams and "members" of FOLL further confused the issue of its own standing by failing to provide the Appeals Board with any evidence of whether FOLL "Inc." was, in fact, the successor organization to the unincorporated FOLL whose members alleged to have both participated in the administrative process and filed the December 15, 2008, administrative appeal. In essence, Attorney Williams and members of FOLL had the relatively low burden of providing the Appeals Board with minimal information necessary to show that the members of FOLL who had participated in the hearings before the Planning Board and the Town Council were some (but certainly not all) of the same persons appearing before the Appeals Board. One member of the Appeals Board summarized the problem succinctly during the January 8, 2009, proceeding:

> "[Friends of Lincoln Lakes] was presented to the Board [as something akin to] a homeowners association at the time of appeal. . . . As it stands there are only two people who delivered [the Application]. They don't really claim to be part of an association, so that being said, in my mind, I don't know who the Friends of Lincoln Lakes are. If I don't know who the friends of Lincoln Lakes are, then I have a hard time deciding whether in fact they were involved in this process, and whether they have any interest in this matter at all.

(*See* RT 3 at 9) (noting the testimony of Appeals Board member Alan Grant.) The basic point addressed by the Appeals Board was whether FOLL had provided evidence sufficient to demonstrate continuity and participation among its membership during the administrative process from the time it was known as the "Friends of Rollins Ridge" to its informal association as the "Friends of Lincoln Lakes" to the group's formal incorporation as a non-profit entity, FOLL "Inc."

14

For reasons that are not clear, FOLL was unwilling to provide the Appeals Board with minimal evidence necessary to memorialize its "party status." It would appear that Attorney Williams had advance notice that the Appeals Board had planned to clarify the standing issues at the January 8, 2009, hearing. (RT 3 at 5, 11.) Accordingly, Williams came to the meeting with Articles of Incorporation and bank statements purporting to show that the FOLL had members and was otherwise identifiable as a legal entity. (RT 3 at 3.) After reviewing the Articles of Incorporation FOLL filed with the Maine Secretary of State, the Appeals Board requested information that would affirmatively demonstrate a participation overlap between those persons who had claimed to be "members" of FOLL during Planning Board and Town Counsel proceedings with the group that appeared before the Appeals Board. Despite requests for evidence tending to establish that the same persons who had participated in the administrative process on behalf of "FOLL"— such as a membership list, by-laws, or a record of whether FOLL members had authorized the administrative appeal (RT 3 at 7-8)—neither Attorney Williams, nor persons attending the Appeals Board meeting, affirmatively identified any one individual member of FOLL who had participated in the proceedings before the Planning Board or before the Town Council. *Id.* Instead, Attorney Williams vaguely opined that "[t]he Friends of Lincoln Lakes had not only attended meetings, but there was in fact testimony where some of the members had stated they were members of the Friends of Lincoln Lakes." (RT 3 at 8.) The Plaintiffs reiterate this point in their 80B brief by asserting that "[i]ndividual members of FOLL . . . repeatedly spoke[] at Town Counsel and Planning Board meetings, and identified themselves as members of FOLL." (Pl.'s Mem. of Law 4.) The administrative record, however, belies this contention.

The record affirmatively discloses that the organizational name "Friends of Lincoln Lakes," or FOLL, was mentioned only once during either of the Planning Board proceedings. During the November 17, 2008, Planning Board Meeting, Bradbury Blake asked Planning Board members how they anticipated the permitting process to move forward and inquired whether the "Friends of Lincoln Lakes" would be able to present expert testimony to the Planning Board. (RT 6 at 4.) Even at that point Mr. Blake did not specifically identify himself as member of FOLL. *Id.* The only other recorded reference to FOLL in the administrative record appears in the Minutes of the Town Council's November 10, 2009, meeting. During a colloquy with members of the Town Council, Planning Board Chairman Peter Phinney intimated that despite receiving comments from the "Friends of Lincoln Lakes" voicing concerns over the Project, the Planning Board would not recommend the Town Council to initiate moratorium proceedings. (RT 14 at 1.) Instead, the Planning Board unanimously found the existing Town Ordinance adequate to conduct a thorough review of the proposed wind facility permit. *Id.* Importantly, at no point during the preliminary administrative proceedings did any person offering comments, or voicing opposition to the Project, specifically identify himself or herself as a member of FOLL. Only after the Appeals Board called into question the collective identity of FOLL did Mary Nollete step forward to affirmatively declare herself a member of FOLL and state that "the Friends of Lincoln Lakes is the same group that formed in the Fall and is here tonight." (RT 3 at 6.) The members of the Board of Appeals were entitled, as fact finders, to conclude that this non-specific and conclusory statement was insufficient evidence to prove the proposition stated, especially when it is

16

considered that Ms. Nollette did not identify herself as a FOLL member at any earlier meeting.

Based on the administrative record, Attorney Williams and FOLL forced the Appeals Board's hand in playing a difficult game of "connect the dots" without providing the Board with the minimal evidence necessary to establish that the members of FOLL "Inc." appearing at the administrative appeal were, in fact, some of the same members of the unincorporated FOLL who had voiced opposition to the Project before the Town Council and the Planning Board.[6] In order to ascertain whether the same entity that had appeared before the Appeals Board had participated in the various administrative hearings, the Appeals Board members where left to speculate as to which individuals could claim to be members of FOLL, and therefore represent the interests of FOLL, before, during or after the FOLL filed its December 15, 2008 administrative appeal. The nebulous nature of FOLL's organizational status was further clouded by the fact that the Articles of Incorporation FOLL filed with the Secretary of State expressly state that FOLL, in fact, has "no members." (RT 12 at 2.) Faced with this additional ambiguity, Attorney Williams and FOLL left the Appeals Board with little choice, but to conclude:

---

[6] The plaintiffs rely on a seminal United States Supreme Court precedent for the proposition that Appeals Board, as a constitutional matter, had no authority to compel FOLL to disclose a full list of its members. *See NAACP v. Patterson*, 347 U.S. 449, 462 (1958) (noting that "compelled disclosure of affiliation with groups engaged in advocacy may constitute an effective restraint on freedom of association"). The Court recognizes the constitutional gravity inherent in the Appeals Board's request for a full list of FOLL's membership. Nonetheless, FOLL carried a burden of proving to the Appeals Board that some members who represented the interests of FOLL, as an unincorporated association, before Town Council and Planning Board were the same persons who lodged the administrative appeal and subsequently participated in the administrative appeal hearing as members of FOLL "Inc." This mandate could have been accomplished simply by pointing to a few individuals who maintained a continuous relationship with FOLL throughout the administrative proceedings. The incorporators, Gary Steinburg, Bradbury Blake, and Harry Epp would have been a good start. These persons were potentially "exposed" as members of FOLL by virtue of signing the Articles of Incorporation. As noted by the January 8, 2009 hearing, however, not one person, other than Mary Nollete, affirmatively disclosed FOLL membership.

> It lack[ed] sufficient evidence to determine whether any persons who actually participated in the Planning Board hearings of November 17, 2008 or December 1, 2008 [were] authorized by the 'Friends of Lincoln Lake' to participate on its behalf or in its name. . . . [or] . . . what, if any, legal identity and interest the 'Friends of Lincoln Lakes' had that pertained to the issues presented by the application of Evergreen before the Planning Board as of those dates.

(RT 4 at ¶ 31). Consequently, the decision to dismiss FOLL's appeal for lack of standing is supported by substantial evidence in the administrative record and the Appeals Board acted well within its discretion to dismiss the FOLL appeal based on the sparse and confusing evidence that guided the standing inquiry,

In addition to the "party status" issues raised on appeal, FOLL reasons that the arbitrariness of the Appeals Boards decision is further illuminated by the Appeals Board's alleged refusal to permit a substitution of the "applicant" in the administrative appeal. On this claim the record is clear: Attorney Williams did not specifically request the Appeals Board to substitute an aggrieved member of FOLL for the organization itself. (RT 4 at 9.) Instead, Attorney Williams simply asked if "substitution of the parties was permitted." *Id.*

Consonant with the Law Court's conception of administrative appeals, the Appeals Board could have allowed FOLL to substitute its name with that of one of its members in order to perfect an appeal. *See Pride's Corner Concerned Citizens Assoc.*, 398 A.2d at 417 ("To superimpose a formal structure of appearance, withdrawal, and substitution of parties upon an otherwise open proceeding seems purposeless and unrealistic."). However, consistent with the above discussion, the fluctuating and nebulous nature of FOLL's organizational status, including who its members were at the

times relevant to the administrative appeal, would again leave the Board with the difficult task of determining whether, in fact, any substituted party could readily be identified as a member of FOLL. [7] The Plaintiffs correctly assert that the Board of Appeals gave some consideration to the possibility of substituting a member of FOLL for the organization. (RT 4 at 9.) Attorney Williams, however, neglected to press the issue, and the Appeals Board did not initiate a formal vote on the whether a substitution named party to the administrative appeal would be permitted. Consequently, the Appeals Board did not abuse its discretion by not addressing the substitution issue in the absence of a formal demand to address it.[8]

FOLL also attacks the dismissal of the appeal as an arbitrary exercise of administrative power on the grounds that the Appeals Board could have "rescheduled the hearing and ordered FOLL to come armed with evidence of standing." (Pl.'s Mem. of Law 7.) As suggested by party-in-interest Evergreen, this claim is without merit. FOLL must have been aware that the Appeals Board had questions concerning the group's right to appear before the Board because Attorney Williams provided the Appeals Board with the Articles of Incorporation FOLL had filed with the Secretary of State at the beginning of the January 8, 2009 hearing. (RT 3 at 4.) FOLL then attested that it had opened a bank account and had many members. *Id.* at 7-8. In response, the Appeals Board asked for

---

[7] As noted in the previous discussion, no person voicing opposition to the Project during the Planning Board and Town Council meetings specifically identified himself or herself as a member or FOLL at the time. Moreover, FOLL "Inc.," as incorporated, was specifically organized with "no members." (RT 12 at 2.) In other words, it is difficult, if not impossible, to ascertain whether any of the persons speaking before the Planning Board, the Town Council and later before the Appeals Board were members of FOLL based on the scant evidence of FOLL's membership during those proceedings.

[8] Had Attorney Williams demanded a substitution of FOLL as a party to administrative appeal with an individual member of FOLL who could demonstrate "aggrieved party" status, the Court would closely scrutinize any effort by the Appeals Board to prevent or prohibit the substitution consistent with *Pride's Corner*. On these facts, however, the record shows that FOLL, through Attorney Williams, failed to specifically request a substitution of the named applicant, FOLL. Therefore, FOLL impliedly abandoned substitution as a solution to the Appeals Board's standing inquiry.

further evidence that would link all of FOLL's organizational manifestations to prove—by member list, organizational by-laws, or meeting list—that FOLL "members" who had participated in the proceedings before the Planning Board and the Town Council also had authorized the administrative appeal and appeared before the Appeals Board. (RT 3 at 4-8.) Attorney Williams thwarted this fact-finding effort by either not providing the requested documents or claiming that the documents did not exist. *Id.* Had she or, at least, the incorporators present at the January 8 meeting been more forthcoming and cooperative with the members' requests for information at the meeting, this result may have been avoided. They had the means to establish standing with them at the hearing, if in fact standing could be demonstrated, in the form of their personal knowledge of the organization and its members.

An ancillary, but important point, given all of the above discussion, stems from the reality that FOLL could have easily perfected its capacity to bring an administrative appeal. In other words, the Appeals Board's dismissal of FOLL's administrative appeal for lack of standing was an entirely avoidable result. The record suggests that FOLL had retained counsel as early as November 2008 in order to assist its efforts in challenging the Project. (RT 4 at 10.) Whether FOLL, as an advocacy group, had achieved a degree of notoriety in the Lincoln community is irrelevant.[9] (RT 4 at 3.) In filing its application with the Appeals Board, FOLL could have avoided the standing issues raised at the January 2009 hearing simply by naming "aggrieved" member of FOLL as the "applicant" to the administrative appeal. Not only would FOLL's collective interests have been

---

[9] This would unhinge the Plaintiffs' argument that they were not required to disclose its membership lists, or the name of any one individual member, for the purposes of surviving the Appeals Board's standing inquiry because, in all likelihood, community members were well aware of the individuals that opposed the Project. *See infra* Discussion III.B.2 n.6 and accompanying text.

represented, but the aggrieved applicant (as a member of FOLL) could have easily satisfied the Appeal Board's concerns over party status by providing the minimal proof necessary to show that at least one FOLL "member" had participated throughout the administrative process.

### 3. Particularized Injury

Although the primary focus of the Appeals Board's "standing" inquiry addressed concerns over FOLL's organizational status, and the Appeals Board's decision reflects this narrowing of the standing issue, for FOLL to emerge as an "aggrieved party" under the Ordinance it must necessarily show that the group itself, or any one of its members, would suffer a particularized injury. Since the appeals board disposed of the appeal on other grounds, it made no findings on this issue and there is nothing for the Superior Court to review in this regard. Although this Court could possibly analyze the "particularized injury" issue at this juncture with regard to a "harmless error" standard (any error in the "party status" analysis would be harmless because the appellant could not have prevailed on the "particularized injury" requirement), it declines to do so for two reasons. First, although that approach makes sense, this Court can find no precedent for applying harmless error principles to the decision of an appeals board in this context. Second, FOLL must demonstrate "particularized need" as an element of standing to bring the 80B appeal in the superior Court and the issue will be full explored below.

### C. FOLL's 80B Appeal

The same standing infirmities that plagued FOLL in its administrative appeal before the Appeals Board similarly justify a dismissal of the instant suit on 80B appeal.

21

"A party's standing to bring a Rule 80B appeal is a function of whether the party participated in the administrative process and whether the party will suffer a particularized harm . . . ." *Norris*, 2005 ME 102, ¶ 13, 879 A.2d at 1012 (citation omitted). As noted by the Town, neither the Plaintiff's Complaint nor its Memorandum of Law specify which FOLL—either the pre-incorporation, associational entity, and "applicant" to the administrative appeal, *or* FOLL "Inc."—is purporting to be the party to the instant 80B action.

Assuming FOLL "Inc.", is the named party in the instant 80B appeal, the record shows this organizational manifestation of FOLL to have participated in the January 8, 2008 Board of Appeals meeting, thereby satisfying the "participation" requirement imposed by the *Norris* analysis. FOLL "Inc.," however, fails to demonstrate that it has standing to bring this appeal because it has provided no proof to suggest that the incorporated entity, any prior incarnation of the entity, or any of its members, have suffered from a particularized injury.

The Law Court has recognized that an entity's "standing" may be derivative of one of its members if that member "suffer[s] the necessary 'particularized injury' to meet the standing requirement." *New England Herald Dev. Group v. Town of Falmouth*, 521 A.2d 693, 696 (Me. 1987) (citing *Pride's Corner Concerned Citizens Assoc. v. Westbrook Board of Zoning Appeals*, 398 A.2d 415, 417-18 (Me. 1979)). FOLL has attempted to demonstrate particularized injury by stating in its brief (Pl.'s Br. 7) that two of its members are abutters to the project and were present at the January 8, 2009 Appeals Board meeting. Indeed, an abutting landowner need only meet a minimal threshold for demonstrating a particularized injury. *Nergaard*, 2009 ME 56, ¶ 18, 973 A.2d at 740-41

22

(citing *Roop v. City of Belfast*, 2007 ME 32, ¶ 8, 915 A.2d 966, 968). However, for FOLL to maintain associational standing, derivative of the particularized injuries suffered by two of its members, those members must be known. *See, e.g. Fitzgerald v. Baxter State Park Authority*, 385 A.2d 189, 195-197 (Me. 1979); *Pride's Corner Concerned Citizens Assoc.*, 398 A.2d at 417-18. The problem with FOLL's assertion resides in the fact that there is no record evidence indicating that either a purported member of FOLL, or Attorney Williams, mentioned to the Appeals Board that any specific "members" were abutters or would suffer a harm "distinct from the harm experienced by the public at large." *Id.* (quoting *Ricci v. Superintendent, Bureau of Banking*, 485 A.2d 645, 647 (Me. 1984)).

The meetings before the Planning Board and Town Counsel demonstrate that the persons opposed to the Project were concerned primarily over whether the wind facility would influence property values, create health problems, alter the aesthetics of the Lincoln Lakes area, and/or adversely impact the local environment. To the extent FOLL now claims to suffer a "particularized injury" derivative of two its "members" alleged to have properties that abut the Project, that claim is unsupported by the record. Without providing any specific information or representation to the Appeals Board, the Planning Board, or the Town Council that members were abutting landowners, or are otherwise in close proximity to the Project, FOLL has not demonstrated that any of its members would experience harm or injury distinct from the harm experienced by the public at large. Therefore, to the extent FOLL "Inc." claims to be the named party on 80B appeal, FOLL "Inc." lacks standing because there is neither specific evidence of a particularized injury

23

suffered by the group, nor specific evidence showing that any of its individual "members" are abutters to the Project.

D.    Standing of Plaintiff Don Smith on 80B Appeal

The Plaintiffs' 80B complaint asserts "Plaintiff Don Smith is a resident of the town of Lincoln and member of the Friends of Lincoln Lake." (Compl. ¶ 4.) Furthermore, it alleges that as "an aggrieved Lincoln property owner, and as a member of the Friends of Lincoln Lakes, [Don Smith's] *own* due process rights have been violated by a refusal of the Board or Appeals to hear the FOLL appeal." (Compl. ¶ 14.) (emphasis added)  As phrased by the heading and elsewhere in the complaint, Mr. Smith does not appear to assert a derivative right to appeal as an alleged member of FOLL, but rather as a plaintiff individually aggrieved by the Lincoln Appeals Board's action.[10]  Therefore, Mr. Smith can maintain standing for the purposes of an 80B appeal only if the record affirmatively discloses that (1) he was a party at the administrative proceeding before the Appeals Board; and (2) he suffered a particularized injury as a result of the Appeals Board's decision. *Norris Family Assoc., LLC v. Town of Phippsburg*, 2005 ME 102, ¶ 11, 879 A.2d 1007, 1012 (citation omitted).

The record does not indicate that Mr. Smith participated in the January 8, 2009, hearing before the Lincoln Appeals Board. Nothing in the meeting minutes affirmatively discloses whether Mr. Smith attended the hearing, authorized Lynne Williams to appear

---

[10] To the extent Mr. Smith seeks 80B appeal as a member of FOLL, there is no record evidence to show that he identified himself as a member of FOLL at any point during the hearings before the Planning Board or at the January 8, 2009, meeting before the Board of Appeals. The only record evidence of Mr. Smith's involvement with the administrative proceedings, either as an alleged member of FOLL or as individual member of the Lincoln community voicing opposition to the Project, is a short comment noted in the Meeting Minutes of the Planning Board's October 21, 2008, proceeding. During the public comment portion of the proceeding, Mr. Smith offered the following: "[I] have lived in Lincoln for 13 years and [I] do not like the view or the killing of birds." (RT 5 at 2.)  As noted in the text of this section, Mr. Smith, having failed to participate in the January 8, 2009, proceeding before the Appeals Board, cannot maintain "aggrieved party" status necessary to perfect his individual capacity to sue on 80B appeal.

on his behalf,[11] or otherwise commented during the hearing. (RT 3 at 1-14.) Although the Law Court, under the auspices of an 80B appeal, has construed the term "party" broadly to embrace "any participant in the proceedings who is aggrieved by the action or inaction of the zoning board of appeals," *Norris*, 2005 ME 102, ¶ 16, 879 A.2d at 1012 (citation omitted), the death-knell of Mr. Smith's party status stems from the unequivocal evidence of record showing that he did not participate in the January 8, 2009, hearing before the Board of Appeals. That Mr. Smith participated in an earlier October 21, 2008, hearing before the Planning Board is inconsequential. As noted by both the Town, and party-in-interest, Evergreen, the law requires Mr. Smith to have participated in the January 8, 2009, hearing in order to maintain an individual right to appeal the Appeals Board's January 29, 2009, written decision to deny standing to FOLL. *See Lucarelli v. City of South Portland*, 1998 ME 239, ¶ 4, 719 A.2d 534, 534-35 (dismissing an intervening plaintiff's 80B appeal for lack of standing where the plaintiff voiced opposition to during preliminary planning board meetings and to city counselors, but failed to participate in the appeals board hearing) (citations omitted). Because the Court finds that the administrative record fails to show conclusively that Mr. Smith participated in the Appeals Board's January 8, 2008, hearing, it is unnecessary to entertain the

---

[11] The Court recognizes that "participation may be formal or informal, in person or through an attorney, and it does not demand that the party have initiated the municipal proceeding or which sought." *Norris*, 2005 ME 102, ¶ 16, 879 A.2d at 1013 (citations omitted). There is no record evidence to suggest that Mr. Smith was ever an identifiable member of FOLL in either is pre- or post- incorporated form. Similarly, the administrative record fails to indicate whether Attorney Williams represented the interests of Mr. Smith individually at the time of the January 8, 2009, hearing before the Appeals Board. *Cf. Norris*, 2005 ME 102, ¶ 3, 879 A.2d at 1010 (permitting an attorney to represent the interests of a individual landowner who did not personally participate in an administrative hearing where evidence showed the attorney to have represented the interests of all landowners in a certain Tax Map area). Presumably, counsel's attorney-client relationship with Mr. Smith, in his individual capacity as a named Plaintiff, formed at some point after FOLL and Smith coordinated 80B appeal effort now before this Court.

question of whether he can demonstrate a particularized injury. Consequently, Plaintiff Don Smith is dismissed as a party to the instant appeal.

The entry is:

1. Decision of the Appeals Board of the Town of Lincoln dismissing the Friends of Lincoln Lake administrative appeal for lack of standing is affirmed.

2. The plaintiffs' 80B appeal is dismissed because neither FOLL nor Don Smith has standing to bring the appeal.

February 3, 2010

William R. Anderson
Superior Court Justice